707 P.2d 1155 (1985)
103 N.M. 345
In re GENERIC INVESTIGATION INTO CABLE TELEVISION SERVICES IN THE STATE OF NEW MEXICO.
LAS CRUCES TV CABLE, Albuquerque Cable Television, Inc., Wentronics, Inc., d/b/a United Cable TV of Gallup, Santa Fe Cablevision Company, d/b/a United Cable of Santa Fe, Appellants,
v.
NEW MEXICO STATE CORPORATION COMMISSION, Appellee, and
Mountain States Telephone and Telegraph Co., General Telephone Company of the southwest, Leaco Rural Telephone Cooperative, Inc., and Dell Telephone Cooperative, Inc., Intervenors-Appellees.
No. 15620.
Supreme Court of New Mexico.
October 8, 1985.
*1156 Campbell & Black, Bruce D. Black, Peter N. Ives, Santa Fe, Fletcher, Heald & Hildreth, David G. Rozzelle, Dan J. Alpert, Washington, D.C., for Las Cruces TV Cable.
Poole, Tinnin & Martin, Robert C. Poole, James R. Scarantino, Albuquerque, Hogan & Hartson, Gardner F. Gillespie, Susan Wing, Richard S. DiSalvo, Washington, D.C., for Albuquerque Cable Television Inc., Wentronics, Inc., and Santa Fe Cable Television Co.
Paul Bardacke, Atty. Gen., R. Michael Barlow, Alex Valdez, Asst. Attys. Gen., Santa Fe, for Corporation Comm.
Sutin, Thayer & Browne, Mary E. McDonald, Daniel A. Najjar, Richard L.C. Virtue, Santa Fe, Cameron R. Graham, NM General Atty. for Mountain States Telephone & Telegraph Co., Albuquerque, for Mountain Bell.
Ward W. Wueste, Jr., General Counsel for Southwest, San Angelo, for General Telephone Co. of the Southwest.
Jones, Gallegos, Snead & Wertheim, James E. Snead, Steven L. Tucker, Santa Fe, for American Petroleum Institute.
Campbell & Black, Bruce D. Black, Peter N. Ives, Santa Fe, Hogan & Hartson, Gardner F. Gillespie, Washington, D.C., for New Mexico Cable Television Assn.
Brenda L. Fox, Carol A. Melton, Michael S. Schooler, David L. Nicoll, Robert St. John Roper, Washington, D.C., Campbell & Black, Bruce D. Black, Peter N. Ives, Santa Fe, for Nat. Cable Television Assn., Inc.

OPINION
FEDERICI, Chief Justice.
This case is before us on removal from the New Mexico State Corporation Commission (Commission) pursuant to N.M. Const. Article XI, Section 7 (Cum.Supp. 1985). The proceeding before the Commission was initiated by Mountain States Telephone and Telegraph Company (Mountain Bell) to determine whether cable television systems within the State of New Mexico were providing public utility telephone service, or anticipating providing such service, without the requisite authority from the Commission. After discovery and a full evidentiary hearing, the Commission determined that Albuquerque Cable Television, Inc. and Los Alamos Cable TV Co. were offering public telephone services that fell within the Commission's jurisdiction. In its Decision *1157 and Order of August 6, 1984, in Docket No. 1060, the Commission ordered them to "cease and desist in the offering of and providing of public utility telephone service through data transmission until further order of this Commission" and required that any New Mexico cable television company apply for and "be granted a Certificate of Public Convenience and Necessity before performing any construction for furnishing public telephone service and before furnishing any public telephone service to any customer."
Upon the petitions of Los Alamos Cable Television Co., Las Cruces TV Cable, Inc., Albuquerque Cable Television, Inc., Wentronics, Inc., d/b/a United Cable TV of Gallup, and Santa Fe Cable Television Co., d/b/a United Cable of Santa Fe (cable companies), all intervenors before the Commission proceeding, the cause was removed to this Court. Appellees Mountain Bell, General Telephone Co. of the Southwest, Leaco Rural Telephone Cooperative, Inc. and Dell Telephone (telephone companies) were intervenors below. National Cable Television Association, New Mexico Cable Television Association, and the American Petroleum Institute filed briefs with this Court as amici curiae.
The issue presented on appeal is whether the Commission has the authority under the New Mexico Constitution or New Mexico statutes to regulate the cable companies' digital data transmission services. We conclude that intrastate digital data transmission services, provided to consumers by New Mexico cable companies on a contract basis for compensation, may properly be subject to regulation by the Commission.
The service provided by the cable companies is known as digital high speed data transmission. Such service is utilized, for example, in computer-aided design, computer-aided manufacturing, high speed remote printing, video teleconferencing and facsimile transmission. Cable television systems have extremely wide bandwidths, giving them the ability to carry a large number of program channels and the capability to use excess capacity for high speed data transmission. The ordinary, "switched voice" telephone system is essentially "narrowband" and not well suited for high speed data transmission. Mountain Bell has constructed several facilities in New Mexico, distinct from the ordinary telephone network, to provide high speed data transmission to individual customers. At the time of the Commission's order, Albuquerque Cable Television was also providing such services, on an experimental basis, between Digital Equipment Corporation and the University of New Mexico, and Los Alamos Cable Television was extending a line to link Los Alamos National Laboratories with the Mesa School. If the line is completed, the Laboratory is to pay monthly line lease charges to Los Alamos Cable, as well as installation and construction charges.
The Commission determined that its jurisdiction over the cable companies' high speed data transmission services was derived from the New Mexico State Constitution, N.M. Const. Article XI, Section 7 (Cum.Supp. 1985), and from the Telephone and Telegraph Company Certification Act, NMSA 1978, Sections 63-9-1 to -19 (Certification Act).
Since the date of the Order and the time the initial briefs were filed in this appeal, the Certification Act was amended to apply only to mobile telephone and radio paging services. NMSA 1978, § 63-9-2 (Cum.Supp. 1985). The Certification Act, therefore, no longer applies to the type of services in question in this case, and those issues raised by the cable companies on appeal relating to the Certification Act are now moot.
The cable companies are currently affected, however, by the recently passed New Mexico Telecommunications Act, NMSA 1978, Sections 63-9A-1 to -20 (Cum.Supp. 1985) (Telecommunications Act), which became effective June 14, 1985. The Telecommunications Act gives the Commission jurisdiction over all "public telecommunications services" except for "such service[s], by a person or entity for the sole and exclusive use of that person or entity and *1158 not for resale, directly or indirectly." §§ 63-9A-3(C) to -5. The Telecommunications Act defines "public telecommunications service" as "the transmission of signs, signals, writings, images, sounds, messages, data or other information of any nature by wire, radio, lightwaves, or other electromagnetic means originating and terminating in this state regardless of actual call routing." § 63-9A-3(B). High speed data transmission services of cable companies fall within the scope of this definition.
After passage of the Telecommunications Act, Mountain Bell filed with this Court a motion to dismiss, and in support of its motion argued that judicial review should be denied until the cable companies exhaust their administrative remedies and until such time as the Commission determines the effect of the Telecommunications Act on the operations of cable companies. Las Cruces TV Cable responded that the passage of the Telecommunications Act has not changed the basic jurisdictional question. We agree. Although the mechanics for regulation have been changed by statute, the question still remains whether N.M. Const. Article XI, Section 7 (Cum. Supp. 1985) grants the Commission jurisdiction over providers of digital high speed data transmission services. Mountain Bell's motion to dismiss is denied.

I. The Constitutional Jurisdiction of the Commission.
The New Mexico Constitution grants the Commission the following powers:
The commission shall have power and be charged with the duty of fixing, determining, supervising, regulating and controlling all charges and rates of railway, express, telegraph, telephone, sleeping car and other transportation and transmission companies and common carriers within the state and of determining any matters of public convenience and necessity relating to such facilities as expressed herein in the manner which has been or shall be provided by law * * *. (Emphasis added.)
N.M. Const. art. XI, § 7 (Cum.Supp. 1985). It is the cable companies' position that this constitutional provision conveys jurisdiction only over enterprises that have traditionally held themselves out for hire to the public as common carriers. We disagree.
In construing the New Mexico Constitution, this Court must ascertain the intent and objectives of the framers. Board of County Commissioners v. McCulloh, 52 N.M. 210, 195 P.2d 1005 (1948). Although a court may not broaden the scope of constitutional provisions beyond their intent, Board of Education v. Robinson, 57 N.M. 445, 259 P.2d 1028 (1953), the Constitution, by its very nature, has some flexibility. Words employed are not necessarily fixed in meaning, but over the years may change and grow to reflect changes in the conditions and knowledge of modern society. Humana of New Mexico, Inc. v. Board of County Commissioners, 92 N.M. 34, 582 P.2d 806 (1978).
Various interpretations of the phrase "telephone, sleeping-car and other transportation and transmission companies and common carriers" have been urged upon us. Although the Constitution does not define "telephone companies" or "transmission companies," this Court has previously determined that transmission companies refers to companies, like telephone companies, which transmit messages. La Follette v. Albuquerque Gas & Electric Co.'s Rates, 37 N.M. 57, 17 P.2d 944 (1932). The cable companies do not contest that their data transmission services involve the transmission of messages, but rather argue that in providing such services they must also be a public utility or common carrier to fall within the scope of Article XI, Section 7. They contend that because of the nature of the cable television industry and the experimental nature of data transmission services, they will not offer the services on a common carrier basis, but will discriminately service particular clients on a contract basis, tailoring the service to meet individual customers' particular needs. Nor are they public utilities, they argue, since data transmission services are not *1159 "essential" services offered to the public indiscriminately in a monopoly market.
We agree with the telephone companies' contention that the Commission's constitutional jurisdiction is not limited to telecommunication services which are provided only on a common carrier basis. Article XI, Section 7 gives the Commission broad powers and duties with respect to all charges and rates of telegraph and telephone companies, other transmission companies, and common carriers. See Las Cruces TV Cable v. New Mexico Corporation Commission, 102 N.M. 720, 699 P.2d 1072 (1985). As this Court has previously stated, "It is difficult to conceive of a more clear and all-inclusive grant of power to a governmental agency." Mountain States Telephone & Telegraph Co. v. New Mexico State Corporation Commission, 90 N.M. 325, 331, 563 P.2d 588, 594 (1977). See also San Juan Coal & Coke Co. v. Santa Fe, San Juan & Northern Railway Co., 35 N.M. 512, 2 P.2d 305 (1931) (the language of Article XI, Section 7 is all-inclusive).
The provisions of the Constitution should not be considered in isolation, but rather should be construed as a whole. State ex rel. Chavez v. Evans, 79 N.M. 578, 446 P.2d 445 (1968). When Article XI is considered in its entirety, we believe it becomes evident that the scope of the Commission's authority was not intended to be limited to common carriers. All references to "common carriers" in Article XI place common carriers in a separate category, distinct from the other terms used. Section 8 refers to "telephone or telegraph company or common carrier"; Section 9, to "transportation and transmission companies and common carriers" and to "transportation or transmission company or common carrier"; and Sections 10 and 11 similarly place this term apart from the other categories. Section 7 does not read "and other common carriers." If a statute makes sense as written, a court will not read words into it which are not present. Burroughs v. Board of County Commissioners, 88 N.M. 303, 540 P.2d 233 (1975). This rule of statutory construction is equally applicable to constitutional provisions. See Postal Finance Co. v. Sisneros, 84 N.M. 724, 507 P.2d 785 (1973).
The Commission's constitutional authority to regulate the rates and charges of motor carriers is also derived from Article XI, Section 7. This constitutional authority is implemented by the Motor Carrier Act, NMSA 1978, Sections 65-2-80 to -127 (Repl.Pamp. 1981 and Cum.Supp. 1985). The Motor Carrier Act establishes a comprehensive regulatory scheme for motor carriers providing transportation services for compensation on either a common carrier or a contract carrier basis. Private carriers, carriers that are not for hire, are excluded from regulation. § 65-2-126 (Cum.Supp. 1985); Lloyd McKee Motors, Inc. v. New Mexico State Corporation Commission, 93 N.M. 539, 602 P.2d 1026 (1979). This Court has previously recognized that the Commission may legitimately exercise its jurisdiction over both common motor carriers and contract motor carriers. See Lloyd McKee Motors, Inc.; Rountree v. State Corporation Commission, 40 N.M. 152, 56 P.2d 1121 (1936). Just as the Commission may regulate contract motor carriers, similarly we determine that it may also regulate contract telephone or transmission carriers. As the Motor Carrier Act illustrates, the Commission may validly regulate companies that clearly are not monopolies, but rather operate in a competitive market place.
The constitutional grant of jurisdiction to the Commission is not limited, as is the purely statutory authority of the New Mexico Public Service Commission, to regulation of public utilities involved in "the rendition of essential public services to a large number of the general public." See NMSA 1978, § 62-3-1 (Repl.Pamp. 1984); Socorro Electric Cooperative, Inc. v. Public Service Co., 66 N.M. 343, 348 P.2d 88 (1959). Nevertheless, the Commission found that data transmission services are essential to a growing segment of the public and rise to a level of public interest sufficient to invoke the State's regulatory jurisdiction. See In re Southern New England Telephone *1160 Co., 59 Pub.Util.Rep. 4th (PUR) 156 (Conn. Department of Public Utility Control 1984) (public need for digital data services). A willingness to serve the public indiscriminately is not necessary; service "to sufficient of the public to clothe the operation with a public interest" is all that is required for state regulation to be appropriate. Griffith v. New Mexico Public Service Commission, 86 N.M. 113, 116, 520 P.2d 269, 272 (1974).
Whether or not the cable companies are common carriers is an issue we need not address in this case, since we have determined that contract carriers as well as common carriers fall within the Commission's constitutional regulatory authority.
Other states have permitted the regulation of data transmission companies providing intrastate services. See, e.g., In re Southern New England Telephone Co.; Data Transmission Co. v. Corporation Commission, 561 P.2d 50 (Okl. 1977). In Data Transmission Co., the Oklahoma Supreme Court affirmed the Oklahoma Corporation Commission's grant of a certificate of convenience and necessity allowing a company to provide intrastate microwave transmission services. The Oklahoma court found the company to be a "transmission company" as that term is used in the Oklahoma Constitution and subject to its commission's regulation. Although the Oklahoma Constitution provided that "[a] `transmission company' shall include any company, receiver or other person owning, leasing or operating for hire any telegraph or telephone line," Okl. Const. Article 9, Section 34, the Oklahoma court held that "it would be unwise to infer that by specifically including only telephone and telegraph companies, the founders of our constitution meant to exclude forever regulation by the Commission of companies who would transmit through a neoteric medium." Data Transmission at 57. Likewise, we determine that although digital high speed data transmission companies were not existent at the time our Constitution was adopted, the terms used were intended to be flexible and encompass such services as they developed.
For the above-stated reasons, we conclude that regulation of intrastate digital high speed data transmission services, provided on a contract basis for compensation, is within the Commission's constitutional mandate.

II. The Statutory Jurisdiction of the Commission.
The cable companies contend that the Telecommunications Act is unconstitutionally broad and extends the Commission's jurisdiction beyond the language and intent of Article XI, Section 7. Since we have already determined that this constitutional provision is sufficiently broad to encompass the types of services at issue, it necessarily follows that the Commission, through the Telecommunications Act or other appropriate legislation, may constitutionally regulate these same services. At this time, we find it unnecessary to further examine the validity of this Act. Since it has not yet been implemented, it is impossible to determine how it will be applied to the cable companies. Moreover, the proceeding that was originally removed to this Court did not involve the Telecommunications Act and therefore, issues regarding this Act are not now properly before us. See Mountain States Telephone & Telegraph Co. v. Corporation Commission, 99 N.M. 1, 653 P.2d 501 (1982) (on removal this Court merely makes independent judgment as to whether various segments of Commission's order are just and reasonable).
The cable companies also contend that Commission regulation of intrastate cable data transmission services would duplicate existing regulation by municipalities and other local franchising authorities, causing overlapping and complex dispersals of regulatory authority. They argue that the Commission may not regulate cable data transmissions in cities which have home rule status under N.M. Const. Article X, Section 6. In accordance with Section 6, a home rule municipality may exercise "all *1161 legislative powers and perform all functions not expressly denied by general law or charter." The term "general law" as used in this section means "a law that applies generally throughout the state, or is of statewide concern... ." Apodaca v. Wilson, 86 N.M. 516, 521, 525 P.2d 876, 881 (1974). N.M. Const. Article XI, Section 7 (Cum.Supp. 1985) is such a "general law." Although the regulatory authority at issue is not specifically denied to home rule municipalities by Article XI, the grant of the authority to the Commission makes its exercise by any other governmental body so inconsistent with the Constitution that it is equivalent to an express denial. NMSA 1978, Section 3-15-7 (Repl. 1985) of the Municipal Charter Act, NMSA 1978, Sections 3-15-1 to -16 (Repl. 1985), provides that a municipal charter "shall not be inconsistent with the constitution of New Mexico." A home rule municipality may not usurp the Commission's authority to regulate pursuant to Article XI, Section 7. Both the City of Albuquerque franchise to Albuquerque Cable Television, Inc. and the City of Los Alamos franchise to Los Alamos Cable Television Co. specifically require those cable companies to comply with state regulatory laws.
The cable companies' reliance upon City of Albuquerque v. New Mexico State Corporation Commission, 93 N.M. 719, 605 P.2d 227 (1979) is misplaced. City of Albuquerque involved the City's establishment of a city limousine service to and from the airport, which was determined by the Court to be a proprietary activity, purely a matter of local concern, and within the City's home rule authority. In contrast, data transmission services are clearly a matter of general statewide concern and therefore within the authority of the Commission to regulate. Moreover, Sections 7 through 12 of Article XI concerning telephone and transmission companies are specific provisions which govern over the general home rule provision of Article X, Section 6. See City of Albuquerque.
American Petroleum Institute, in its amicus brief, contends that the Commission's order violates the notice provisions of the New Mexico Administrative Procedures Act (APA), NMSA 1978, Sections 12-8-1 to -25. The APA applies, however, only to an agency "which is specifically placed by law under the Administrative Procedures Act." § 12-8-2(A). Livingston v. Ewing, 98 N.M. 685, 652 P.2d 235 (1982). There is no provision in the law subjecting the Commission to the provisions of the APA.

III. Federal Pre-emption.
The cable companies contend that state regulation of non-video cable services has been pre-empted by the Federal Communications Commission's (FCC) assertion of broad regulatory jurisdiction over such services and by its comprehensive framework for the development of a nationwide telecommunications system. We determine that at this time there has been no pre-emption.
The Communications Act of 1934, 47 U.S.C. §§ 151 to 610 (1982), empowers the FCC to regulate "all interstate and foreign communication by wire or radio * * *." 47 U.S.C. § 152(a) (emphasis added). The FCC's authority is determined by "the nature of the communications which pass through the facilities, [and not by] the physical location of the lines." California v. FCC, 567 F.2d 84, 86 (D.C. Cir.1977), cert. denied, 434 U.S. 1010, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978), quoting In Re American Telephone & Telegraph Co., 56 F.C.C.2d 14, 21 (1975). As the cases cited by the cable companies illustrate, there has always been a clear nexus between intrastate and interstate services before federal regulation has been found to preempt the exercise of state and local jurisdiction. See, e.g., New York Telephone Co. v. FCC, 631 F.2d 1059 (2d Cir.1980) (local exchange service used in connection with interstate foreign exchange and common control switching arrangement services); Puerto Rico Telephone Co. v. FCC, 553 F.2d 694 (1st Cir.1977) (interconnection of private branch exchange equipment to the telephone *1162 network).[1] It is important to emphasize that the services in question in the present case are purely intrastate in nature and are not currently connected to an interstate data transmission system.
In a recent opinion, the United States Supreme Court recognized that federal law may pre-empt state regulation in three circumstances:
[F]irst, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law, Jones v. Rath Packing Co., 430 US 519, 525, 51 L Ed 2d 604, 97 S Ct 1305 [1309] (1977); second, when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby "left no room for the States to supplement" federal law, Rice v. Santa Fe Elevator Corp., 331 US 218, 230, 91 L Ed 1447, 67 S Ct 1146 [1152] (1947); and, finally, when compliance with both state and federal law is impossible, Florida Lime & Avocado Growers, Inc. v Paul, 373 US 132, 142-143, 10 L Ed 2d 248, 83 S Ct 1210 [1217-1218] (1963), or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 US 52, 67, 85 L Ed 581, 61 S Ct 399 [404] (1941).
Capital Cities Cable, Inc. v. Crisp, ___ U.S. ___, ___-___, 104 S.Ct. 2694, 2699-2701, 81 L.Ed.2d 580, 588-589 (1984). In Crisp the United States Supreme Court held that an Oklahoma regulation which required cable television operators in Oklahoma to delete all advertisements for alcoholic beverages contained in out-of-state signals retransmitted by them to their subscribers was pre-empted by federal law. A nexus between intrastate and interstate cable television service was clearly evident in Crisp, and the FCC had specifically asserted exclusive jurisdiction over "pay-cable" services which were affected by Oklahoma's advertising ban.
In contrast, in the instant case the cable companies cite to no federal law or regulation that specifically pre-empts state regulation of intrastate cable data transmission services. Furthermore, Congress has not legislated comprehensively so as to occupy the entire field. That the states still have some regulatory authority was made clear by the Cable Communications Policy Act of 1984 (Cable Act), Pub.L.No. 98-549, 98 Stat. 2779, enacting Title VI as a new title to the Communications Act of 1934. Section 621(d)(2) of the Cable Act provides in part:
Nothing in this title shall be construed to affect the authority of any State to regulate any cable operator to the extent that such operator provides any communication service other than cable service, whether offered on a common carrier or private contract basis. (Emphasis added.)
The Cable Act defines "cable service" as:
(A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and
(B) subscriber interaction, if any, which is required for the selection of such video programming or other programming service.
§ 602(5).
The cable companies contend that state regulation would stifle the development of new communications services in New Mexico and would adversely affect the federal policy of promoting the unfettered development of such services. Its adverse effect upon federal policies and objectives provides a sufficient interstate nexus, they argue, that federal pre-emption should apply. We are aware that the telecommunications *1163 field is rapidly developing and that in the future, the FCC may want to occupy this area more completely. At present, however, not all state regulation of digital high speed data transmission is preempted. Furthermore, until the Telecommunications Act is applied, it is impossible to determine if any conflict between actual state regulation and federal policies will exist. It is unclear at this time whether the Commission intends to impose an all-encompassing type of regulation upon digital data transmission services or merely desires to exert passive supervisory control. The Telecommunications Act provides an entirely different regulatory scheme from the Certification Act. A stated purpose of the Telecommunications Act is to encourage competition in the telecommunications industry, NMSA 1978, Section 63-9A-2 (Cum.Supp. 1985), rather than to protect the service areas of certified companies, and it provides for the possible removal from rate regulation of any public telecommunication service that is "subject to competition within a local market area or group of local market areas." NMSA 1978, § 63-9A-8 (Cum.Supp. 1985). Depending upon its application, such a regulatory scheme may be compatible, and not conflict, with federal policies and objectives.
We conclude that state regulation of the data transmission services at issue in this case are not currently pre-empted by federal regulation. There is no clear statutory intent by Congress to pre-empt state law. Furthermore, it is premature at this time to determine if New Mexico state regulation under the new Telecommunications Act will conflict with any federal objectives in this field.

IV. Conclusion.
The Commission may validly exert regulatory authority over intrastate digital high speed data transmission services offered by cable companies on a contract basis for compensation under its jurisdiction granted by N.M. Const. Article XI, Section 7 (Cum. Supp. 1985). Such state regulation is not currently preempted by federal regulation.
The Commission's order is vacated, however, because the Certification Act, upon which it was based in part, is no longer applicable. The case is remanded to the Commission for hearings and a new order to be made pursuant to the Telecommunications Act.
IT IS SO ORDERED.
RIORDAN, STOWERS and WALTERS, JJ., concur.
SOSA, Senior Justice, dissenting.
NOTES
[1] We are aware of the FCC's recent decision, In Re Cox Cable Communications, Inc., Commline, Inc. and Cox DTS, Inc., FCC File No. CCB-DFD-83-1 (released on September 5, 1985), in which the FCC pre-empted state and local regulation of data transmission facilities located within the State of Nebraska, but used to originate, distribute or terminate interstate communications. This case again illustrates that the FCC preempts only when interstate communications are adversely affected by state regulation. A nexus between intrastate and interstate services clearly existed in Cox.