350 S.E.2d 734

**STATE ex rel. Wanda Belle SWANIGAN**

v.

**Danny O. CLINE, Judge of the Circuit
Court of Braxton County, West
Virginia.**

No. 17075.

Supreme Court of Appeals of
West Virginia.

Nov. 19, 1986.

Joseph H. Martin, Sutton, for appellant.

Paula M. Cunningham, Asst. Pros. Atty.,
Sutton, for appellee.

McGRAW, Justice:

The petitioner in this original proceeding, Wanda Belle Swanigan, seeks a writ of prohibition preventing her trial before the respondent, the Honorable Danny O. Cline, Judge of the Circuit Court of Braxton County, under an information charging her with receipt of stolen property. She contends that because a grand jury had previously returned a "not true bill" to this same charge, the subsequent information filed by the prosecuting attorney was improper. We agree and grant her petition for writ of prohibition precluding prosecution until possible return of a true bill of indictment by a grand jury.

On February 6, 1985, a Braxton County Grand Jury returned a bill of indictment charging the petitioner with receipt of stolen property endorsed, "NOT a true bill." On February 7, 1985, an assistant prosecuting attorney filed an information with the Clerk of the Circuit Court charging the petitioner with the same offense. On April 17, 1985, she moved for dismissal of the information on the ground that it was precluded by the previous action of the grand jury. On February 13, 1986, following a hearing on the matter, the respondent entered an order which denied the petitioner's motion to dismiss. The petitioner then instituted the instant petition for writ of prohibition.

The petitioner was charged with receipt of stolen property under West Virginia Code § 61–3–18 (1984 Replacement Vol.) which defines such receipt as larceny. Specifically, the petitioner was charged with receiving $109.50 in cash which she knew or had reason to believe had been stolen. Thus, the applicable penalty provision was West Virginia Code § 61–3–13 (1984 Replacement Vol.), which provides that simple larceny of items valued at less than two hundred dollars is a misdemeanor offense.

■ Rule 7(a) of the Rules of Criminal Procedure provides, "Any misdemeanor may be prosecuted by indictment or information."[1] In the instant proceeding, the information was filed after return of a not true bill by the grand jury.[2] Thus, the issue presented is whether a grand jury's refusal to indict a suspect precludes a prosecuting attorney from subsequently charging a misdemeanor by bill of information.

■ While there is authority to the contrary,[3] we hold that a prosecutor is precluded from subsequently prosecuting a misdemeanor charge by information where the grand jury initially considering the charge returned a not true bill. Further prosecution after the return of a not true bill is controlled by West Virginia Code § 52–2–9 (1981 Replacement Vol.), which provides as follows: "Although a bill of indictment be returned not a true bill, another bill of indictment against the same person for the same offense may be sent to and acted on by the same or another grand jury."

The protective role of the grand jury must be preserved. In *State ex rel. Miller v. Smith*, 168 W.Va. 745, 285 S.E.2d 500 (1981), this Court traced the history of the grand jury, noting that:

> At the time of the American Revolution, the grand jury was perceived by most Americans as a highly esteemed institution, a perception enhanced by the spirit of independence and resistence [sic] to imperial government displayed by some of the colonial grand juries. Francis Hopkinson, a pamphleteer of the revolutionary period, reflected the popular attitude when he described the grand jury as "a body of truth and power inferior to none but the legislature itself." R. Younger, *The People's Panel: The Grand Jury in the United States (1631–1941)*, 41 (1963). Our founding fathers also shared in this sentiment. Thomas Jefferson, for example, referred to the grand jury as both the "true tribunal of the people" and as the "sacred palladium of liberty." S. Pandover, *The Complete Jefferson* at 128 (1943).

*Miller*, 168 W.Va. at 750, 285 S.E.2d at 503. We further recognized that "the grand jury serves a dual function: it is intended to operate both as a sword, investigating cases to bring to trial persons accused on just grounds, and as a shield, protecting citizens against unfounded malicious or frivilous [sic] prosecutions." *Id.* at 751, 285 S.E.2d at 504, see *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); *Commonwealth v.*

---

1. *See also* West Virginia Constitution art. VIII, § 10, which provides

   Magistrate courts shall have such original jurisdiction in criminal matters as may be prescribed by law, but no person shall be convicted or sentenced for a felony in such courts. In criminal cases, the procedure may be by information or warrant of arrest, without presentment or indictment by a grand jury.

2. The prosecutor's office elected to seek a bill of indictment from the grand jury instead of initially prosecuting the charge by information as is the customary practice in prosecuting a misdemeanor charge.

3. *See, e.g., State v. Hill*, 208 So.2d 154 (Fla.Dist. Ct.App.1968); *State v. Mounts*, Ind.App., 460 N.E.2d 168, 169 (1984); *State v. Chavez*, 93 N.M. 270, 599 P.2d 1067 (N.M.Ct.App.1979); *State v. Jefferson*, 79 Wash.2d 345, 485 P.2d 77 (1971); *see also*, 41 Am.Jur.2d *Indictments and Information* § 35 (1968); Annot., 120 A.L.R. 713 (1939); 42 C.J.S. *Indictment and Information* § 72 (1944 & Supp.1986). The majority of courts in the relatively few jurisdictions considering the question have held that the right to file an information is not affected by the failure or refusal of the grand jury to return an indictment. We reject these holdings as being unjust and without due regard for the sanctity of the grand jury.

*McLeod*, 394 Mass. 727, 477 N.E.2d 972 (1985). Although our primary concern in *Miller* was with the former function, our primary concern in the instant case is with the latter.

In *Miller* we noted our constitutional duty to preserve this dual function of the grand jury. *Miller*, 168 W.Va. at 752, 285 S.E.2d at 504. Unfortunately the federal grand juries, as well as those of a number of our sister states, have not adhered closely to the historical pattern. They now appear to function as a sword in the hands of a dominant prosecutor. *Id.* For this reason, if for no other, we should be particularly alert to the possibility of abuse when a modern grand jury refuses to approve the prosecutor's offer of a true bill. The abandonment of the shield function is a corruption and emasculation of the historical role of the grand jury. As far back as 1681, there are examples of a grand jury refusing to indict in the face of prosecutorial pressure. The case of the Earl of Shaftsbury is well known in our jurisprudence and is often cited as "establishing the grand jury as a bulwark against the oppression and despotism of the Crown." *In re Russo*, 53 F.R.D. 564, 568 (C.D.Cal. 1971). In the case of Stephen College, a protestant suffering under the Stuart regime, the grand jury, after reporting their decision, made during secret deliberations, would explain only that they had voted according to their conscience, and would stand by their decision. Kaufman, *The Grand Jury—Its Role and Its Powers*, 17 F.R.D. 331–33 (1955). We agree with Judge Kaufman that "[s]uch forthright independence is deserving of continued existence [because it is] ... the essence of the grand jury's spirit at its best." *Id.* at 334.

As previously noted, West Virginia Constitution art. VIII, § 10 permits misdemeanor prosecutions in magistrate court by warrant, by information, by presentment, or by indictment. Rule 7(a) of the Rules of Criminal Procedure permits misdemeanor prosecutions "by indictment *or* information." (Emphasis added). Without question, a prosecutor may, under the constitution and the rules of criminal procedure, proceed initially by information in the prosecution of a misdemeanor.[4] Where a prosecutor proceeds initially by way of presentation of evidence to a grand jury for return of a bill of indictment, however, it would be an affront to the dignity of the grand jury and, as an aside, contrary to our concepts of fundamental fairness for the prosecutor to then proceed by information following return of a not true bill.

Our view was elucidated almost a century ago by the Supreme Court of Nebraska in *Richards v. State*, 22 Neb. 145, 34 N.W. 346 (1887), *overruled on other grounds, Horbach v. Omaha*, 49 Neb. 851, 69 N.W. 121 (1896), where the court stated:

> The act of charging a party with the commission of a crime which may blast his reputation and cover his name with ignominy is certainly a serious one, which ought not to be done without sufficient cause. From the days of the *magna charta*, the common law, in theory at least, has protected all persons from needless accusations. The grand jury itself was derived for the purpose of privately investigating a charge against a party, and finding a reasonable probability of the truth of the charge, before making it public in the form of an accusation or indictment. In all such investigations the jurors are, as in other cases, the judges of the credibility of the witnesses, and they may believe or disbelieve any or all of the testimony introduced before them. If they refuse to believe certain testimony, and therefore refuse to find a bill, it is not in the power of a prosecuting officer to say that he believes such testimony, and thereupon proceed to file an information.

---

**4.** The Court notices that proceeding by way of information is now the normal course for misdemeanors. The record does not reveal why the prosecutor chose the unusual tactic of presenting his evidence to the grand jury. We do note however, that it would be highly improper for a prosecutor to use a grand jury to provide an

*Richards*, 22 Neb. at 146, 34 N.W. at 347. This rule has not been overturned by the Nebraska court, and we feel it the preferred rule which should apply with equal force today.[5]

In the instant case, the grand jury apparently found the evidence presented by the prosecutor insufficient to support a determination of probable cause necessary to return an indictment against the petitioner for receipt of stolen property. The following day, the prosecutor's office, believing the grand jury's evaluation of the evidence to be incorrect, chose to ignore the vote of the grand jury and filed a bill of information with the circuit court. If the grand jury is to truly act as a shield which protects citizens against unfounded, malicious, or frivolous prosecutions, prosecuting attorneys cannot be permitted to scorn the solemn actions of grand jurors chosen to perform this function.[6] Once a prosecutor has chosen the indictment route, the office must hold to that route until an indictment is secured by again presenting evidence to the original or a subsequent grand jury.

For these reasons, we hold that return of a not true bill on a misdemeanor charge precludes prosecution until return of a true bill of indictment by a grand jury. Accordingly, pursuant to West Virginia Code § 53–1–1 (1981 Replacement Vol.), we hereby issue a writ of prohibition.

Writ as moulded awarded.

---

illusory shield against partisan passion or private enmity. *See Miller*, 168 W.Va. at 750–51, 285 S.E.2d at 503.

5. The *Richards* holding does not apply to those situations in which new evidence is offered. *Richards*, 22 Neb. at 146, 34 N.W. at 347.

6. We are concerned that a prosecutor desiring to prosecute by information, notwithstanding the return of a not true bill by a grand jury, tends to personalize a decision that ought to remain depersonalized. Moreover, we fear that such personalization could often be rooted in prosecutorial vindictiveness, a malady which must be avoided altogether.