2001-NMCA-088

34 P.3d 624

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**ISAAC M., Child–Appellee.**

**No. 21,792.**

Court of Appeals of New Mexico.

Sept. 7, 2001.

Certiorari Denied, No. 27,156, Oct. 18, 2001.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steve S. Suttle, Ass't Attorney General, Albuquerque, NM, for Appellant.

Phyllis H. Subin, Chief Public Defender, Samantha J. Fenrow, Ass't Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} This appeal raises a single issue: whether the State may proceed by criminal information after a no-bill is returned by a grand jury. We conclude that NMSA 1978, § 31–6–11.1 (1979), which prohibits the State from resubmitting a case to the grand jury if a grand jury has previously returned a no-

bill, does not apply when a prosecutor seeks to proceed by information. We further conclude that the issue in this case continues to be controlled by *State v. Chavez,* 93 N.M. 270, 599 P.2d 1067 (Ct.App.1979), in which we interpreted the law of re-submission prior to the enactment of Section 31–6–11.1 and held that the State may proceed by information after the return of a no-bill. We reverse the order dismissing the information and remand for proceedings consistent with this opinion.

## PROCEDURAL HISTORY

{2} In March 1999, the State filed a petition charging Isaac M. (Isaac) with criminal sexual penetration, kidnaping, tampering with evidence, aggravated assault, and unlawful possession of a handgun by a minor. A special master found probable cause to believe that Isaac had committed a criminal offense and ordered Isaac detained under NMSA 1978, § 32A–2–13 (1993). The State then filed a notice of intent to seek an adult sentence pursuant to NMSA 1978, § 32A–2–20(A) (1996) and presented the case to a grand jury, which returned a true bill against Isaac. The petition was disposed of by an administrative closing order once the indictment was filed. Based on this Court's decision in *State v. Ulibarri,* 1999–NMCA–142, ¶ 15, 128 N.M. 546, 994 P.2d 1164, *aff'd,* 2000–NMSC–007, ¶ 3, 128 N.M. 686, 997 P.2d 818, the State sought a new indictment against Isaac. In an attempt to spare the alleged victim another grand jury appearance, the State tailored its grand jury presentation around an investigating officer. However, the officer failed to respond to the subpoena, and the grand jury returned a no-bill. The State then filed a criminal information, containing the same allegations as were in the petition and the first indictment, and requested a preliminary hearing. Isaac moved to bar the preliminary hearing, arguing that the State was precluded from proceeding against Isaac by Section 31–6–11.1. After hearing arguments from both sides, the trial court dismissed the information by written order. The State appeals from that order.

{3} Although this case is currently under the jurisdiction of the children's court and therefore controlled by the children's code,

NMSA 1978, §§ 32A–2–1 through 33 (1993, as amended through 1999), both parties assume that the statutes and concepts governing adult prosecutions control, and they argue their cases accordingly. We assume, without deciding, that the parties are correct. Because the issue was not raised by the parties, we leave for another day the question of the State's authority to proceed against a child if no probable cause is found in response to the prosecutor's notice of intent to seek an adult sentence. *See* § 32A–2–20(A).

## STANDARD OF REVIEW AND RULES OF CONSTRUCTION

{4} Because this case requires us to interpret constitutional and statutory provisions, our standard of review is de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995); *State v. Shaulis-Powell,* 1999–NMCA–090, ¶ 17, 127 N.M. 667, 986 P.2d 463.

{5} Our primary goal in interpreting the Constitution is to give effect to the intent and objectives of the framers. *See In re Generic Investigation Into Cable Television Servs.,* 103 N.M. 345, 348, 707 P.2d 1155, 1158 (1985). Similarly, we interpret statutes to give effect to the legislature's intent. *See State v. Martinez,* 1998 NMSC 023, ¶ 8, 126 N.M. 39, 966 P.2d 747. The normal rules of statutory construction apply equally to constitutional and statutory provisions. *See State ex rel. Wood v. King,* 93 N.M. 715, 718, 605 P.2d 223, 226 (1979); *Postal Fin. Co. v. Sisneros,* 84 N.M. 724, 725, 507 P.2d 785, 786 (1973). The primary rule of construction is that, when possible, we give effect to the clear and unambiguous language of a statute. *See State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990) ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."); *State v. Adam M.,* 2000–NMCA–049, ¶ 5, 129 N.M. 146, 2 P.3d 883 (same).

## DISCUSSION

{6} The general rule is that, in the absence of an explicit constitutional or statutory provision to the contrary, "the acts of

the grand jury with respect to the finding of an indictment are not binding on the prosecuting attorney with respect to his filing of an information, and an information may be filed, although the grand jury has investigated the case and refused or failed to find an indictment." 42 C.J.S. *Indictments and Informations* § 43 (1991) (footnote omitted); *see also Chavez,* 93 N.M. at 273, 599 P.2d at 1070. In New Mexico, both the Constitution and statutory law define the scope and limits of the State's ability to initiate criminal proceedings against an accused. The issue raised by this appeal is whether these provisions are contrary to the general rule.

{7} Article II, Section 14 of the Constitution provides:

> No person shall be held to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general or their deputies, except in cases arising in the militia when in actual service in time of war or public danger. No person shall be so held on information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination.

N.M. Const. art. II, § 14.

■ {8} The State argues that Article II, Section 14 grants the State the right to proceed by either indictment or information and, by its silence on the issue, does not limit the State's right to proceed by the alternate method should the State's first choice prove unsuccessful. Isaac, on the other hand, asks this Court to interpret the word "or" separating the two methods as requiring that the State be limited to its first choice. In *Chavez,* we resolved this issue in favor of the State when we held that the Constitution does not expressly limit "the power of the district attorney either to resubmit a matter to a grand jury or to proceed by information after a grand jury has returned a no[-]bill." *Id.* at 273, 599 P.2d at 1070. We reaffirm that holding today. Had the drafters of the Constitution intended to prohibit the State from changing its method of prosecution when its initial choice is unavailable or unsuccessful, they would have included some language to that effect. *Cf.* Idaho Const. art. 1, § 8 ("[P]rovided further, that after a charge has been ignored by a grand jury, no person shall be held to answer, or for trial therefor, upon information of the public prosecutor."). As the Montana Supreme Court wrote when interpreting a constitutional provision similar to Article II, Section 14:

> The provision, in effect, declares that no citizen shall be held to answer, except upon a charge preferred by one of the methods of procedure indicated. There is nothing in it to indicate an intention that any citizen has a vested right to be charged by one method, to the exclusion of the other. Its provisions are in the alternative, without express limitations as to either, and we think it was the intention that either the indictment or information should be available, and that either might be resorted to in case the other should not be available, or for any cause break down during the progress of the prosecution.... But this does not mean that, after an indictment has been dismissed, he may not be charged with the same offense by any method the use of which is permitted by the Constitution, until his guilt or innocence has been ascertained by the verdict of a jury, or, in any event until he has once been in jeopardy.

*State v. Vinn,* 50 Mont. 27, 144 P. 773, 776 (1914). Unless a statutory provision expressly limits the State's authority as prosecutor, *Chavez* is controlling.

■ {9} Section 31–6–11.1 states, "After a grand jury acts on the merits of evidence presented to it and returns a no-bill, the same matter shall not be presented again to that jury or another grand jury on the same evidence." Recognizing that the statute does not explicitly refer to the filing of an information, Isaac argues that the legislature nonetheless intended that the return of a no-bill should end the criminal process absent new evidence. We reject Isaac's contention because his interpretation would require us to read language into the statute, which we will not do. *See State v. Gutierrez,* 102 N.M. 726, 730, 699 P.2d 1078, 1082 (Ct.App.1985) (stating that when statute makes sense as writ-

ten, this Court does not read words into the statute).

{10} In *Chavez*, we held that the former grand jury statute, NMSA 1953, § 41–5–27 (1854), did not apply to the filing of an information because the statute was enacted prior to the constitutional amendment that gave the State the authority to proceed by information. 93 N.M. at 272, 599 P.2d at 1069. This reasoning does not apply to Section 31–6–11.1 given that it was enacted in 1979, after the constitutional amendment. Nonetheless, we conclude that the legislature did not intend for Section 31–6–11.1 to apply to the filing of an information on the ground that the legislature is presumed to have been aware of the availability of this method of initiating a prosecution and yet chose not to address it. *See Benavidez v. Sierra Blanca Motors*, 120 N.M. 837, 843, 907 P.2d 1018, 1024 (Ct.App.1995) (discussing rule of expressio unius est exclusio alterius); *see also Chavez*, 93 N.M. at 274, 599 P.2d at 1071 (expressing doubt that Section 31–6–11.1 would apply to the filing of an information given that, by its terms, the statute applies only to grand jury proceedings). Further, we note that our conclusion that Section 31–6–11.1 does not apply to the filing of an information is consistent with the opinions of other courts that have addressed this issue. *See Orsini v. State*, 286 Ark. 283, 691 S.W.2d 175, 177 (1985); *Rea v. State*, 3 Okla.Crim. 269, 105 P. 381, 381–82 (1909), *overruled on other grounds by Cole v. State*, 18 Okla.Crim. 430, 195 P. 901, 903 (1921); 42 C.J.S., *supra*, § 43, at 365 ("A statute prohibiting a charge from being resubmitted to the grand jury upon return of a no true bill does not prevent an accusation by information after the grand jury has investigated the charge.").

{11} Notwithstanding the plain language of Section 31–6–11.1 and our holding in *Chavez*, Isaac argues that allowing the State to proceed after the return of a no-bill would undermine the protective role of the grand jury, violate analogous principles to double jeopardy, and allow the prosecutor unfettered power to harass potential defendants. In support of his argument regarding the sanctity of the grand jury's return of the no-bill, Isaac relies on *State ex rel. Swanigan v.*

*Cline*, 177 W.Va. 107, 350 S.E.2d 734, 737 (1986), in which the court held that once a prosecutor has chosen to initiate criminal proceedings by submission to a grand jury, the prosecutor may not thereafter proceed by information.

{12} We are not persuaded by *Swanigan*. It is true that *Swanigan* contains language similar to that found in *Ulibarri* and other New Mexico cases emphasizing the importance of grand juries. We reaffirm our support for those cases and our adherence to the importance of grand juries. However, those cases have not overruled or cast doubt on *Chavez*. *Chavez* does not detract from the important role of grand juries in our judicial system. Adoption of the *Swanigan* rationale would be contrary to our cases on double jeopardy and well-recognized limits in New Mexico on the court's ability to override prosecutorial discretion. *See State v. Brule*, 1999–NMSC–026, 127 N.M. 368, 981 P.2d 782.

{13} Additionally, the circumstances under which the prosecutor sought to proceed by information after the return of the no-bill in *Swanigan* are distinguishable from the circumstances of the case at bar. In that case, the state filed its information after concluding that the grand jury's evaluation of the evidence was simply incorrect. *See Swanigan*, 350 S.E.2d at 737. In Isaac's case, however, the special master and the first grand jury, albeit with inadequate instruction, found probable cause to believe that Isaac had committed the crimes charged and the decision of the second grand jury appears to have been based in part on the investigating officer's failure to appear. Finally, and importantly, we note that the *Swanigan* opinion is contrary to the weight of authority which holds that a prosecutor is not prohibited from proceeding by information after the return of a no-bill. *See id.* at 735 n. 3 (rejecting contrary authority including *Chavez* ).

■ {14} Isaac argues that the principles underlying the prohibition against double jeopardy apply with equal force to his situation insofar as the government, with all its resources, should not be allowed multiple attempts to show probable cause. The cases

on which Isaac relies are double jeopardy cases that address the government's attempt to secure a conviction at a trial on the merits. *See, e.g., Grady v. Corbin,* 495 U.S. 508, 515–24, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled on other grounds by United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Isaac does not cite to any cases that apply the rule against double jeopardy to the pretrial stages of a prosecution. In fact, it is settled law that jeopardy does not attach pretrial, but instead attaches when the petit jury is impaneled and sworn at a jury trial or when the first evidence is presented at a bench trial. *See, e.g., State v. Nuñez,* 2000–NMSC–013, ¶ 28, 129 N.M. 63, 2 P.3d 264. We find no reason to depart from the settled law in this case.

■■■■ {15} Finally, we agree with Isaac that a prosecutor's discretion should be limited by concerns of fundamental fairness and that it is the responsibility of the courts to scrutinize charging decisions in limited appropriate cases that seek to circumvent established criminal procedure or constitutional safeguards. However, Isaac does not argue that this is such a case, and we disagree that such principles require us to ignore the plain meaning of the Constitution or Section 31–6–11.1 by creating a bright line rule that would limit a prosecutor's power to proceed by either indictment or information, but not both. We believe that the prosecutor's discretion is limited by the prohibition against prosecutorial vindictiveness. *See Brule,* 1999–NMSC–026, ¶ 10, 127 N.M. 368, 981 P.2d 782 (discussing test for establishing claim of pre-trial prosecutorial vindictiveness); *State v. De La O,* 102 N.M. 638, 641, 698 P.2d 911, 914 (Ct.App.1985) (holding that application for injunctive relief provides adequate remedy to prevent prosecutorial vindictiveness or harassment through repeated filings against same person). In this case, the trial court did not find that the State filed the information out of vindictiveness, and we agree with the court's determination. As noted above, the record shows that the special master and the first grand jury found probable cause to believe that Isaac had committed the crimes charged and that the decision of the second grand jury may have been based in part on the investigating officer's

failure to appear. While we can imagine a case in which the prosecutor's decision to file an information after a grand jury or a court has found no probable cause to proceed was made with the intent to harass an individual, this is not such a case.

■■■■ {16} Our conclusion is consistent with the cases cited by Isaac in support of his argument that this Court should construe the law to limit prosecutorial discretion. The cases cited by Isaac do not impose strict or bright line rules prohibiting a prosecutor from particular actions, but give the trial court the discretion to evaluate a case under the particular circumstances to determine whether a prosecutor's actions are an abuse of the criminal process or are undertaken to circumvent a court procedure or a defendant's rights. *See State v. Lucero,* 108 N.M. 548, 550, 775 P.2d 750, 752 (Ct.App.1989) (holding that trial court may refuse to restart the six-month rule after the state has filed a nolle prosequi if the facts show that the state filed the nolle prosequi to circumvent the rule); *State v. Ericksen,* 94 N.M. 128, 130–31, 607 P.2d 666, 668–69 (Ct.App.1980) (holding that power to nolle prosequi cannot be used to circumvent rules restricting the disqualification of a judge). Similar to the rules applied in these cases, the prohibition against vindictive prosecution allows the trial court to evaluate each case under the totality of the circumstances and serves as an adequate check on the State's power as prosecutor. *See De La O,* 102 N.M. at 641, 698 P.2d at 914.

## CONCLUSION

{17} In sum, we hold that neither the Constitution nor Section 31–6–11.1 limits the State's ability to proceed by information after a grand jury has returned a no-bill. We reaffirm the holding of *Chavez.* We also reject Defendant's policy arguments that allowing a prosecutor to file an information after a no-bill from the grand jury would eliminate the protective role of the grand jury, violate double jeopardy, and allow prosecutorial vindictiveness.

{18} For the foregoing reasons, we reverse the trial court's dismissal of the criminal

information and remand for further proceedings consistent with this opinion.

{19} **IT IS SO ORDERED.**

We concur: RICHARD C. BOSSON, Chief Judge, CELIA FOY CASTILLO, Judge.