2007-NMSC-023

160 P.3d 566

**STATE of NEW MEXICO, ex rel., Bill RICHARDSON, Governor of the State of New Mexico, Petitioner,**

v.

**FIFTH JUDICIAL DISTRICT NOMINAT-ING COMMISSION, Respondent.**

No. 30,254.

Supreme Court of New Mexico.

May 18, 2007.

Gary K. King, Attorney General, Stuart M. Bluestone, Deputy Attorney General, David K. Thomson, Zachary A. Shandler, Assistant Attorney Generals, Hilary Chandler Tompkins, Office of the Governor, Santa Fe, NM, for Petitioner.

Sanders & Westbrook, P.C., Maureen A. Sanders, Special Assistant Attorney General, Albuquerque, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} A district judge position in the Fifth Judicial District sits vacant because of a perceived conflict between our Governor's constitutional authority to appoint judges from a list of qualified and recommended nominees and the Fifth Judicial District Nominating Commission's discretion in recommending qualified nominees to the Governor. We are thus confronted with two critically important competing interests, which we must reconcile in order to comply with both the spirit and letter of our Constitution. The suit comes to us as an original proceeding in mandamus, in which the Governor petitioned this Court for a Writ of Mandamus to issue against the Commission to require it to "convene . . . to actively solicit, accept and evaluate applications from qualified lawyers and send more than one nominee to the Governor for consideration for appointment to fill the vacancy" in the Fifth Judicial District.

{2} We hereby grant the Governor's Petition in part and remand to the Commission to expeditiously develop and implement guidelines for the active solicitation of additional qualified applicants to fill the vacancy in the Fifth Judicial District. We further direct the Commission to make a good faith effort to submit at least two names to the Governor, after utilizing the solicitation process, in order to discharge its intertwined constitutional duties to actively solicit quali-

fied applicants and to recommend, in its discretion, additional names to the Governor so that the Governor has before him a bona fide choice.

## I. FACTS

{3} The material facts in this case are undisputed. On November 7, 2006, Dean Suellyn Scarnecchia ("Dean"), Chair of the Judicial Nominating Commission, advised Governor Bill Richardson ("the Governor") that the Fifth Judicial District Nominating Commission ("the Commission") would meet on January 8, 2007, to consider applications to fill the judicial vacancy created by the retirement of Judge Jay Forbes ("Judge Forbes") of the Fifth Judicial District. On November 15, 2006, the Governor received a letter from Judge Forbes, dated November 9, 2006, advising that he would retire effective December 31, 2006. On December 14, 2006, the Governor received from the Dean the applications of five attorneys for the judicial vacancy in the Fifth Judicial District. The five applicants were Denise A. Madrid Boyea, James Richard Brown, Matthew T. Byers, Bennie George Davis, and Raymond L. Romero.

{4} The Commission convened on January 8, 2007, in Carlsbad, to consider the five applicants. Following its meeting, the Dean sent a letter to the Governor, which he received on January 10, 2007, recommending "the following one (1) candidates (in alphabetical, unranked order) for this position: James Richard Brown." The Governor previously appointed James Richard Brown ("Brown") to a newly created district judge position in the Fifth Judicial District; however, Brown lost his subsequent general election. On January 11, 2007, the Governor sent a letter to the Dean requesting, pursuant to Article VI, Section 36 of the New Mexico Constitution, that the Commission reconvene and submit additional names.

{5} The Commission reconvened on January 29, 2007, in Carlsbad and met for less than forty-five minutes. The Dean informed the Governor that the Commission had reviewed the original list of five applicants to "determine if any additional names from that pool should be nominated" and that "[t]he

Commission voted not to nominate any additional names from the applicant pool," as no other applicant garnered a majority vote.

{6} On January 30, 2007, the Governor wrote to the Dean stating "[t]he commission is unlawfully usurping the executive's constitutional authority to make judicial appointments" and that "[t]here is no legitimate basis for the commission to send me only one name." Therefore, the Governor "demand[ed] that the commission reconvene and send me more than one nominee for this judicial vacancy." The Dean responded on February 2, 2007, that she would "not be able to reconvene the Commission, as the constitution does not provide for additional requests or meetings," concluding "[b]ased on the constitution, the practice of past commissions and the applicable rules, there is no legal basis for me to require the Commission to recommend more than one name."

{7} The Governor responded on February 5, 2007, requesting "a detailed explanation of the ... Commission's decision not to send me more names, including the specific criteria applied to evaluate each applicant, the interviewing process, and the specific reasons why *each* of the other four applicants were not recommended to me" as well as "a detailed description of the voting procedure you employed as you are relying on the fact that the Commission reached a majority vote for only one applicant on both occasions." The Dean responded on February 9, 2007, providing the information requested, including a description of the Commission's voting procedures, as well as the Minutes of both the January 8, 2007, and January 29, 2007, Commission meetings.

{8} On February 22, 2007, the Governor petitioned this Court for a Writ of Mandamus to issue against the Commission to require it to "convene ... to actively solicit, accept and evaluate applications from qualified lawyers and send more than one nominee to the Governor for consideration for appointment to fill the vacancy created by the retirement of Judge Forbes."

## II. ANALYSIS

{9} This Court exercises original jurisdiction in mandamus, pursuant to Article VI, Section 3 of our Constitution, which provides in pertinent part: "The supreme court shall have original jurisdiction in ... mandamus against all state officers, boards and commissions ...; it shall also have power to issue writs of mandamus ... and to hear and determine the same." *See State v. Kirkpatrick,* 86 N.M. 359, 363, 524 P.2d 975, 979 (1974). " 'Mandamus is a drastic remedy to be invoked only in extraordinary circumstances.' " *State ex rel. Shell W. E & P, Inc. v. Chavez,* 2002–NMCA–005, ¶ 8, 131 N.M. 445, 38 P.3d 886 (quoting *Brantley Farms v. Carlsbad Irrigation Dist.,* 1998–NMCA–023, ¶ 12, 124 N.M. 698, 954 P.2d 763). Indeed, mandamus " 'lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law.' " *Id.* (quoting *Brantley Farms,* 1998–NMCA–023, ¶ 16, 124 N.M. 698, 954 P.2d 763). We have long recognized that mandamus is ordinarily " 'the proper remedy to compel the performance of an official act by a public officer.' " *Laumbach v. Bd. of County Comm'rs of San Miguel County,* 60 N.M. 226, 233, 290 P.2d 1067, 1070 (1955) (quoting *Heron v. Garcia,* 48 N.M. 507, 510, 153 P.2d 514, 515 (1944)).

{10} The issue before us is whether the Commission has a constitutional duty to actively solicit qualified applicants so as to make a good faith effort to provide the Governor with a list of more than one recommended nominee. If the Commission's actions at issue here are purely discretionary, mandamus will not lie "to correct or control the judgment or discretion of a public officer in matters committed to his care in the ordinary discharge of his duties." *State ex rel. Four Corners Exploration Co. v. Walker,* 60 N.M. 459, 463, 292 P.2d 329, 331 (1956). We are guided by the same standard we have employed since the very first days of our Statehood:

[I]t is ... well established that mandamus will lie to compel the performance of mere ministerial acts or duties imposed by law upon a public officer to do a particular act or thing upon the existence of certain facts or conditions being shown, even though the

officer be required to exercise judgment before acting.

*Id.* at 463, 292 P.2d at 331–32 (citing *State ex rel. Walker v. Hinkle,* 37 N.M. 444, 24 P.2d 286 (1933); *State ex rel. Otto v. Field,* 31 N.M. 120, 241 P. 1027 (1925); *State ex rel. Evans v. Field,* 27 N.M. 384, 201 P. 1059 (1921); *State v. Marron,* 18 N.M. 426, 137 P. 845 (1913)).

> A ministerial act, as applied to a public officer, is an act or thing which he is required to perform by direction of law upon a given state of facts being shown to exist, regardless of his own opinion as to the propriety or impropriety of doing the act in the particular case.

*Id.* at 463, 292 P.2d at 332.

{11} We must construe our Constitution in order to determine whether mandamus properly lies. We begin with a description of the judicial nominating and appointment system set forth in our Constitution. Under our merit selection system, the governor fills judicial vacancies, defined in Article VI, Section 34 of our Constitution, by appointment, selecting from a list of names recommended by either the "Appellate judges nominating commission," N.M. Const. art. VI, § 35, the "District court judges nominating committee," N.M. Const. art. VI, § 36 (stating that "[e]ach and every provision of Section 35 of Article 6 of this constitution shall apply to the 'district judges nominating committee'" except those regarding the composition of the committee), or the "Metropolitan court judges nominating committee," N.M. Const. art. VI, § 37 (stating that "[e]ach and every provision of Section 35 of Article 6 of this constitution shall apply to the metropolitan court judicial nominating committee" except those regarding the composition of the committee).[1] The Constitution states in pertinent part:

> Upon the occurrence of an actual vacancy in the office of [district judge], the commission shall meet within thirty days and within that period submit to the governor *the names of persons* qualified for the judicial office and recommended for appoint-

ment to that office by a majority of the commission.

N.M. Const. art. VI, § 35 (emphasis added). In order to make its recommendation to the governor, each commission has a constitutional duty to "actively solicit, accept and evaluate applications from qualified lawyers for the position of [district judge]." *Id.*

{12} After receiving the initial list, the Constitution authorizes the governor to request additional names from the commission:

> Immediately after receiving the commission nominations, the governor may make one request of the commission for submission of *additional names,* and the commission shall promptly submit such *additional names* if a majority of the commission finds that *additional persons* would be qualified and recommends *those persons* for appointment to the judicial office.

*Id.* (emphasis added).

{13} The Constitution then sets forth the time frame pursuant to which the governor must make his appointment: "The governor shall fill a vacancy or appoint a successor to fill an impending vacancy in the office of [district judge] within thirty days after receiving *final nominations* from the commission by appointing *one of the persons nominated* by the commission for appointment to that office." *Id.* (emphasis added). The Constitution further makes provision for circumstances under which "the governor fails to make the appointment within that period or from *those nominations.*" *Id.* (emphasis added). In such cases, "the appointment shall be made from *those nominations* by the chief justice or the acting chief justice of the supreme court." *Id.* (emphasis added).

{14} In the instant case, the Commission submitted to the Governor one name, former Judge Brown, whereupon the Governor exercised his constitutional right to request "additional names." *See id.* The Commission reconvened, reviewed the five original applicants, and decided not to recommend any additional applicants to the Governor, as no other applicant garnered a majority vote of the Commission. The Governor, citing his

---

1. Although Sections 36 and 37 of Article VI of our Constitution refer to nominating "commit-tees," for the sake of consistency, we refer to all judicial nominating bodies as "commissions."

constitutional prerogative to make the ultimate choice as to whom should fill judicial vacancies, demanded that the Commission reconvene and send him additional names. When the Dean, as Chair of the Commission, declined to reconvene the Commission, citing a lack of legal basis to do so, the Governor petitioned this Court that a Writ of Mandamus issue against the Commission to actively solicit and evaluate more applicants and to submit to the Governor more than one name.

{15} In interpreting Sections 35 and 36 of Article VI for the first time, we are faced with a question of constitutional proportions, in which the parties highlight the inherent conflict they perceive between the Governor's right to choose from a list of qualified and recommended applicants and the Commission's discretion in recommending qualified applicants to the Governor. We do not, however, believe this conflict is intractable, nor do we believe that it requires either the Governor or the Commission to compromise the critically important constitutional interests at stake. Our reading of Sections 35 and 36, in the context of their history and purpose, leads us to conclude that a solution is available in which both interests can be preserved and reconciled in such a way as to comply with both the spirit and letter of our Constitution. *See Bd. of County Comm'rs of Bernalillo County v. McCulloh*, 52 N.M. 210, 215–16, 195 P.2d 1005, 1008 (1948) (" 'It is the duty of this court to interpret the various provisions of the Constitution to carry out the spirit of that instrument. We should not permit legal technicalities and subtle niceties to control and thereby destroy what the framers of the Constitution intended.' ") (quoting *State ex. rel. Ward v. Romero*, 17 N.M. 88, 100, 125 P. 617, 621 (1912)).

{16} We address first the Governor's constitutional authority to fill judicial vacancies. For most of our state's history, our Constitution required partisan election of the entire judiciary, N.M. Const. art. VI, § 4, 12 (1911, prior to 1988 amendment); N.M. Const. art.

VI, § 28 (1965, prior to 1988 amendment), with the governor filling judicial vacancies by appointment, N.M. Const. art. VI, § 28 (1965, prior to 1988 amendment); art. XX, § 4 (1911, prior to 1988 amendment). The governor's choice was virtually unconstrained, except for certain constitutional requirements such as age, education, and residency of appointees. N.M. Const. art. VI, §§ 8, 14 (1911, prior to 1988 amendment); N.M. Const. art. VI, § 28 (1965, prior to 1988 amendment). In 1988, the Constitution was amended to institute a merit selection system, in which the governor now fills judicial vacancies by appointment from a list of applicants who are evaluated on a variety of merit-based factors [2] and recommended by a judicial nominating commission. N.M. Const. art. VI, §§ 35–37. The appointed judge is then subject to one partisan election in the next general election, after which he or she is subject to nonpartisan retention election, requiring a fifty-seven percent supermajority to be retained in office. N.M. Const. art. VI, § 33. In designing the merit selection system, the drafters envisioned limiting the pool from which the governor could appoint based on the merit of the applicants. The drafters did not, however, envision nor intend to foreclose the governor's choice altogether. Indeed, the drafters were cognizant of populist concerns that moving away from partisan election to a merit selection system would divest voters almost entirely of their long-standing role in the judicial selection process. Therefore, the drafters vested the governor, as the elected representative of the people of the State of New Mexico, with ultimate authority in selecting the individual to fill a judicial vacancy. Our reading of Sections 35 and 36 strives to give effect to these populist concerns. *See In re Generic Investigation into Cable Television Servs.*, 103 N.M. 345, 348, 707 P.2d 1155, 1158 (1985) ("In construing the New Mexico Constitution, this Court must ascertain the intent and objectives of the framers."). If we allow the

---

2. The Commission adopted the Rules Governing Nominating Commissions on April 19, 1997. Pursuant to Section 4 of the Rules, nominating commissions evaluate applicants based on the following criteria: physical and mental ability to perform the tasks required; impartiality; industry; integrity; professional skills; community involvement; social awareness; collegiality; writing ability; decisiveness; judicial temperament; and speaking ability. N.M. Const. art. VI, add. § 4.

Commission's decision to prevail, in a very real sense, the Commission, and not the Governor would exercise the ultimate choice as to whom should serve the Fifth Judicial District as its judge. We cannot sanction such a result, which is at variance with the history and spirit of our Constitution.[3]

{17} Such a result would also be discordant with the constitutional text itself. Section 35, the provisions of which apply equally to Section 36, states clearly that the commission shall provide the governor with "the *names of persons* qualified for the judicial office and recommended for appointment" and, after receiving "the commission *nominations*," allows the governor to request "additional *names*." N.M. Const. art. VI, § 35 (emphasis added). Within thirty days of receiving the commission's "final *nominations*," the governor must "appoint[ ] *one of the persons nominated by the commission.*" *Id.* (emphasis added). While rules of statutory construction, which apply equally to constitutional construction, establish that the use of plurals is without significance, NMSA 1978, § 12–2A–5(A) (1997); *see State v. Isaac M.*, 2001–NMCA–088, ¶ 5, 131 N.M. 235, 34 P.3d 624, Section 35 goes beyond the mere use of plurals to state with unambiguous specificity that the governor must "appoint[ ] *one of the persons nominated by the commission.*" N.M. Const. art. VI, § 35 (emphasis added). In this way, Section 35 evinces a clear intent that the governor, as representative of the people, will have before him more than one name from which he can make a bona fide choice with respect to whom shall fill the judicial vacancy. *See McCulloh*, 52 N.M. at 215–216, 195 P.2d at 1008. This language is particularly telling in light of the Governor's historical power to appoint judges and the drafters' populist concerns in creating our merit selection system. We find inapposite the Commission's contention that if the Governor fails to appoint Brown, the Chief Justice of this Court must do so. Regardless of who makes the ultimate appointment, Section 35 envisions that person will have a list of names from which to make an actual choice.

{18} Parallel to the Governor's right to have a list of qualified and recommended applicants from which to exercise a bona fide choice, we are equally sensitive to the Commission's right to exercise its discretion in recommending such qualified applicants to the Governor. It is the Commission alone that decides who to recommend to the Governor. We will neither trammel upon, nor diminish in any way, that core function reposed in the Commission by our Constitution.

{19} The Commission does not, however, possess unbridled discretion but rather determines, based on a variety of factors and by a majority vote, *see* N.M. Const. art. VI, add. §§ 4, 8(B), which applicants are "qualified for the judicial office" and "submit[s] to the governor the names of [such] persons," both qualified and recommended. N.M. Const. art. VI, § 35. As an integral part of its exercise of discretion in recommending qualified applicants to the Governor, the Commission has a concomitant duty, imposed by the Constitution, to "actively solicit, accept and evaluate applications from qualified lawyers for the position of [district judge]." *Id.* This pivotal provision immediately follows the provision establishing the composition of the Commission and immediately precedes those provisions setting forth the details and time frame under which (i) the Commission must evaluate and recommend applicants; (ii) the Governor may request more names; and (iii) the Governor must appoint one of them. The placement of this pivotal provision demonstrates the overarching and ongoing nature of the Commission's duty.

{20} In this case, the Governor exercised his constitutional right to request more names from the Commission. Thereupon, the Commission reconvened but considered only the original list of five applicants, four of whom the Commission had already decided, in exercising its discretion, not to recommend for judicial office. The Commission did not renew its announcement of the judicial va-

---

3. Indeed, the Rules recognize unequivocally that "the New Mexico Constitution vests the Governor with the authority to appoint judges and that the commission does not select the judges, [so]

the commission should strive to recommend a list of two or more names for each position to the Governor." N.M. Const. art. VI, add. § 8(C).

cancy in the Fifth Judicial District, nor do anything else to discharge its duty to "actively solicit . . . qualified lawyers." We respectfully disagree with the Commission and the dissent that this duty applies only to the initial announcement that the judicial vacancy exists and does not apply to the Commission's duty to reconvene and consider submitting additional names to the Governor, if he so requests. Dissent ¶¶ 34–35. If we adopted such an interpretation, we would, in effect, be dictating the exercise of the Commission's discretion by requiring the Commission to recommend an applicant it already determined should not be recommended, thus sanctioning an unrealistic and irrational reading of the provision. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (" '[O]ur construction must not render the [Constitution's] application absurd, unreasonable, or unjust.' ") (quoting *Aztec Well Servicing Co. v. Prop. & Cas. Ins. Guar. Ass'n*, 115 N.M. 475, 479, 853 P.2d 726, 730 (1993)).

{21} While the initial announcement, application, and evaluation process runs on a strict thirty-day time frame, Section 35 directs the Commission to act "promptly" in submitting "additional names" to the Governor. The Governor's deadline for appointment only begins to run once he receives "the final nominations" from the Commission. These distinct time frames evince an intent that the Commission has a reasonable time within which to complete the substantial process of soliciting and evaluating additional qualified applicants; reevaluating, in the Commission's discretion, the original applicants; and sending a final list of recommended applicants to the Governor. The Constitution thus envisions that the Commission will, in good faith, utilize such a process to allow the Governor to have before him a bona fide choice of qualified and recommended applicants.

{22} We acknowledge that the type of active solicitation of qualified applicants we describe here has not become part of the established custom of past commissions, nor of the Commission which is party to this suit. We intend no disparagement of past commissioners, nor of the present Commission, for following over fifteen years of custom. Nonetheless, this is the Court's first opportunity to address this question in a formal manner, and in doing so, we are bound to follow the letter and spirit of the Constitution, whether or not consistent with custom. In interpreting Sections 35 and 36 for the first time, we conclude that the Commission failed to discharge its constitutional duty of active solicitation which is inextricably intertwined with its constitutional duty to make all reasonable efforts to provide the Governor with additional names upon request. We, therefore, respectfully disagree with the dissent's contention that the Governor "can identify within the text no express obligation that the Commission failed to perform." Dissent ¶ 30. When the Governor requested additional names so that he could discharge his constitutional authority to appoint a judge, from among a pool of qualified applicants recommended by the Commission, the Commission was constitutionally duty bound to actively solicit additional qualified applicants. Nevertheless, the Commission only considered the original five applicants at its second meeting and again determined that it could only recommend Brown. Because the Commission failed to discharge its constitutional duty of active solicitation, the Governor is left with no choice and is thus precluded from discharging his constitutional authority to select and appoint a qualified and recommended person to fill the vacancy in the Fifth Judicial District.

{23} Some may perceive this conflict as creating a constitutional impasse. However, our reading of Sections 35 and 36 reveals a system designed to deal with precisely the situation we confront here, and today we breathe life into that constitutional design. Based on the text, history, and purpose of Sections 35 and 36, we have a system in which the Governor's choice in judicial appointment is tempered and limited by the Commission's discretion in determining which qualified applicants should be recommended for judicial office. However, the Governor also has a constitutional right to request that the Commission expand that pool to other qualified persons. The only way the Commission can do so is by discharging its constitutional duty to actively

solicit qualified applicants. Our reading of Sections 35 and 36, unlike that of the dissent, thus avoids rendering mere surplusage the constitutional provision mandating active solicitation by the Commission. *See Block v. Vigil–Giron,* 2004–NMSC–003, ¶ 9, 135 N.M. 24, 84 P.3d 72. The drafters never had in mind, nor can we sanction, a reading of Sections 35 and 36 in which the Commission would expand the pool only to applicants the Commission had already decided, by a majority vote, should not be recommended. *See Rowell,* 121 N.M. at 114, 908 P.2d at 1382. Ultimately, the fundamental purpose of Sections 35 and 36 was to create a judicial selection system based on the merit of the applicants. In the past, the importance of active solicitation, indeed the constitutional mandate to actively solicit qualified applicants, may have been overlooked, but this mandate shall henceforth require adherence thereto.[4]

## III. CONCLUSION

{24} We, therefore, hold that mandamus lies and, accordingly, grant the Governor's Petition in part. We remand to the Commission to expeditiously develop and implement guidelines to discharge its constitutional duty to actively solicit additional qualified applicants to fill the vacancy in the Fifth Judicial District. We further direct the Commission to make a good faith effort to submit at least two names to the Governor, after utilizing the solicitation process, in order to discharge its intertwined constitutional duties to actively solicit qualified applicants and to recommend, in its discretion, additional names to the Governor so that the Governor has before him a bona fide choice.

{25} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ
MAES, RICHARD C. BOSSON, Justices.
and PAMELA B. MINZNER, Justice
(concurring in part and dissenting in part).

MINZNER, Justice (concurring in part and dissenting in part).

{26} I respectfully dissent from the proposed result and from much of the analysis in the majority opinion. I disagree with my colleagues that we have the authority to do what the Governor has requested. The Governor has asked us to order the Fifth Judicial District Nominating Commission to convene a third time and to send him an additional qualified nominee for the existing vacancy in the Fifth Judicial District. In addition, or perhaps alternatively, he asks us to direct the Commissioners to reconvene to satisfy their obligation to solicit additional applicants or make a further investigation "into the qualifications of pending candidates."

{27} The majority opinion appears to concede our inability to order the Commission to send more than one name. With that concession, for the reasons that follow, I agree. The majority, to its credit, seeks to identify a resolution to the conflict between the Governor's interpretation of his power and the Commission's interpretation of its responsibilities under the New Mexico Constitution. The majority would order the Commission to reconvene, because when the Governor requested additional names, the Commission was required by the constitution "to actively solicit additional qualified applicants." Maj. Op. ¶ 22. With this conclusion, I do, respectfully, disagree.

{28} Because the text of the constitution is important, I have included it as an appendix to this opinion. Other than those who have served on nominating commissions or applied for consideration by a nominating commission, few New Mexico citizens will have read the entire text of the relevant constitutional amendment, and the text as a whole is important. The Governor relies on our power to issue a writ of mandamus, which I believe is more limited than does the majority, and which in any event depends on the clarity of the obligations established by the constitution.

---

4. The constitutional mandate that commissions actively solicit qualified applicants signals the urgency of creating standing commissions with terms, a responsibility reserved to the Legislature. Further, standing commissions may indeed avoid inconsistent voting on applicants, an issue alluded to in this suit.

{29} "This Court exercises constitutionally invested original jurisdiction in mandamus against all State officers, boards and commissions." *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 363, 524 P.2d 975, 979 (1974); *accord* N.M. Const. art. VI, § 3. In the past, we have exercised our original jurisdiction in mandamus when one branch of government interferes with the authority of another branch of government. *See State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999–NMSC–019, ¶ 11, 127 N.M. 272, 980 P.2d 55.

> Such an exercise may be appropriate when the petitioner presents a purely legal issue concerning the non-discretionary duty of a government official that (1) implicates fundamental constitutional questions of great public importance, (2) can be answered on the basis of virtually undisputed facts, and (3) calls for an expeditious resolution that cannot be obtained through other channels such as a direct appeal.

*Id.* The Governor contends all these factors are present in this case. The Governor further asserts that mandamus is defined to include an order directing the restoration of rights or privileges of which the claimant asserts he has been illegally deprived. *See State ex rel. Bird v. Apodaca*, 91 N.M. 279, 282, 573 P.2d 213, 216 (1977). The Governor maintains this Court should "restore" his right to choose a judicial appointee. Ultimately, the Governor argues that the action of the Commission in sending only one name, if sustained in this proceeding, effectively precludes his having a choice of appointee and "eviscerate[s his] appointive authority."

> He argues that:

> mandamus will lie to compel the performance of mere ministerial acts or duties imposed by law upon a public officer to do a particular act or thing upon the existence of certain facts or conditions being shown, even though the officer be required to exercise judgment before acting. A ministerial act, as applied to a public officer, is an act or thing which he is required to perform by direction of law upon a given state of facts being shown to exist, regardless of his own opinion as to the propriety or impropriety of doing the act in the particular case.

*State ex rel. Reynolds v. Bd. of County Comm'rs*, 71 N.M. 194, 198–99, 376 P.2d 976, 979 (1962) (quoting *State ex rel. Four Corners Exploration Co. v. Walker*, 60 N.M. 459, 463, 292 P.2d 329, 331–32 (1956)) (internal citations omitted). The Governor contends the Commission's failure or refusal to reopen the application process and actively solicit additional candidates, or to reassess the additional four applicants not selected for recommendation when he exercised his constitutional right to request additional nominees, also infringes upon his appointment power.

{30} The Governor's reliance on his appointment power is misplaced. The Constitution provides that the Governor may request additional names, and the Commission shall submit "such additional names *if a majority of the commission finds that additional persons would be qualified and recommends* those persons for appointment" to the Governor. N.M. Const. art. VI, § 35 (emphasis added). The Commission did not make such a finding when it reconvened.

{31} The Commission was acting within the text of the amendment when it determined to recommend only one name initially and to send no additional name or names after the Commission reconvened. The Governor asks us to "compel the performance of an act which the law specially enjoins as a duty resulting from an office." NMSA 1978, § 44–2–4 (1884). Yet he can identify within the text no express obligation that the Commission failed to perform. The Commission performed its express constitutional obligation when its Chair announced the vacancy, initiated the application process, conducted interviews, evaluated the candidates, voted on who should be recommended to the Governor, and sent him the list. *See* N.M. Const. art. VI, add. §§ 2, 4, 6–9. In fact, the Commission's duty, as mandated by the Constitution, is to submit *only* "the names of persons qualified for the judicial office and recommended ... to that office" which must be determined "by a *majority* of the commission." N.M. Const. art. VI, § 35 (emphasis added). I think a majority of this Court agrees that we cannot compel the Commission to send more than one name. At the heart of the Commis-

sion's obligations is the responsibility to provide the Governor a list from which he can choose without fear of choosing badly. That is what I believe the Legislature and the people of this State intended.

{32} According to Section 4 of the Judicial Nominating Commission Rules, the commissioners must evaluate candidates on the basis of the constitutional requirements and specifically enumerated evaluative criteria including physical and mental ability to perform the tasks required, impartiality, industry, integrity, professional skills, community involvement, social awareness, collegiality, writing ability, decisiveness, judicial temperament, and speaking ability. N.M. Const. art. VI, add. § 4. These factors indicate that the constitutional duty and authority of the Commission is discretionary and not ministerial, making mandamus inappropriate. In fact, the Commission would have been acting outside the bounds of its authority and duty had it simply sent the Governor additional names of candidates it had already determined, by a majority vote, were unqualified for appointment.

{33} The majority's decision to require the Commission to reconvene and solicit further candidates seems to me equally inappropriate. The delicate balance of power which the 1988 amendment to the constitution tried to achieve, as expressed in the text, is not facilitated by the majority's decision. Prior to 1988, the Governor had virtually unfettered discretion to appoint whomever he chose for judicial vacancies. The Legislature chose when it enacted the 1988 amendment to limit the Governor's appointment power in the judicial nomination process, to strike a balance of power between a judicial nominating commission and the Governor, and it elected not to include a requisite number of names to be sent to the Governor from each commission.

{34} The majority offers three reasons for its decision to require the Fifth Judicial District Nominating Commission to reconvene. First, it suggests we have an obligation to protect the Governor's power of appointment. Maj. Op. ¶ 16. Second, the majority relies on the use of the plural within Section 35, in reference to the Commission's obligations,

the Governor's power of appointment, and the obligation of the Chief Justice if the Governor does not appoint in a timely fashion. *Id.* ¶ 17. Finally, the majority opinion relies on placement of the obligation of the Commission to solicit applications within Section 35, in the second full paragraph, "demonstrating the overarching and ongoing nature of the Commission's duty." *Id.* ¶ 19.

{35} With respect, none of the three reasons offered by the majority seem compelling, and none of them justify diminishing the discretion of each nominating commission. As the majority acknowledges, *id.* ¶ 17, "the use of plurals is without significance." Further, the majority opinion relies on the "clear intent that the governor, as representative of the people, will have more than one name from which he can make a bona fide choice with respect to whom shall fill the judicial vacancy." *Id.* I think we must determine what the Legislature intended, and practices of the nominating commissions since 1988, as well as the text of Section 35 that make the scope of the Governor's power unclear. It is worth noting that the Governor has two appointments to the Commission who can argue for his preference(s) during the voting process, if he directs them to do so. Finally, the placement of the second paragraph of Section 35 seems to me to emphasize a duty of soliciting applicants prior to the date the Commission convenes. That language is not repeated after the reference, in the last paragraph, to the Governor's right to solicit more names.

{36} For these reasons, I do not think the majority has made a case for the result it reaches. One could say that the majority opinion grants half of the relief the Governor has requested, in an effort to support the greater likelihood that he will achieve the ultimate goal of receiving at least one additional name. Yet, we do not seem to have the power or authority to issue a writ of mandamus under our existing cases to compel the commissioners to act in accordance with the Governor's petition. I would deny the writ. My colleagues being of a different view, I respectfully dissent.

## Sec. 35. [Appellate judges nominating commission.]

There is created the "appellate judges nominating commission", consisting of: the chief justice of the supreme court or the chief justice's designee from the supreme court; two judges of the court of appeals appointed by the chief judge of the court of appeals; the governor, the speaker of the house of representatives and the president pro tempore of the senate shall each appoint two persons, one of whom shall be an attorney licensed to practice law in this state and the other who shall be a citizen who is not licensed to practice law in any state; the dean of the university of New Mexico school of law, who shall serve as chairman of the commission and shall vote only in the event of a tie vote; four members of the state bar of New Mexico, representing civil and criminal prosecution and defense, appointed by the president of the state bar and the judges on this committee. The appointments shall be made in such manner that each of the two largest major political parties, as defined by the Election Code, shall be equally represented on the commission. If necessary, the president of the state bar and the judges on this committee shall make the minimum number of additional appointments of members of the state bar as is necessary to make each of the two largest major political parties be equally represented on the commission. These additional members of the state bar shall be appointed such that the diverse interests of the state bar are represented. The dean of the university of New Mexico school of law shall be the final arbiter of whether such diverse interests are represented. Members of the commission shall be appointed for terms as may be provided by law. If a position on the commission becomes vacant for any reason, the successor shall be selected by the original appointing authority in the same manner as the original appointment was made and shall serve for the remainder of the term vacated.

The commission shall actively solicit, accept and evaluate applications from qualified lawyers for the position of justice of the supreme court or judge of the court of appeals and may require an applicant to submit any information it deems relevant to the consideration of his application.

Upon the occurrence of an actual vacancy in the office of justice of the supreme court or judge of the court of appeals, the commission shall meet within thirty days and within that period submit to the governor the names of persons qualified for the judicial office and recommended for appointment to that office by a majority of the commission.

Immediately after receiving the commission nominations, the governor may make one request of the commission for submission of additional names, and the commission shall promptly submit such additional names if a majority of the commission finds that additional persons would be qualified and recommends those persons for appointment to the judicial office. The governor shall fill a vacancy or appoint a successor to fill an impending vacancy in the office of justice of the supreme court or judge of the court of appeals within thirty days after receiving final nominations from the commission by appointing one of the persons nominated by the commission for appointment to that office. If the governor fails to make the appointment within that period or from those nominations, the appointment shall be made from those nominations by the chief justice or the acting chief justice of the supreme court. Any person appointed shall serve until the next general election. That person's successor shall be chosen at such election and shall hold the office until the expiration of the original term.

N.M. Const. art. VI, § 35.

## Sec. 36. [District court judges nominating committee.]

There is created the "district court judges nominating committee" for each judicial district. Each and every provision of Section 35 of Article 6 of this constitution shall apply to the "district judges nominating committee" except that: the chief judge of the district court of that judicial district or the chief judge's designee from that district court shall sit on the committee; there shall be only one appointment from the court of appeals; and

the citizen members and state bar members shall be persons who reside in that judicial district.

N.M. Const. art. 6, § 36.

### Sec. 37. [Metropolitan court judges nominating committee.]

There is created the "metropolitan court judges nominating committee" for each metropolitan court. Each and every provision of Section 35 of Article 6 of this constitution shall apply to the metropolitan court judicial nominating committee except that: no judge of the court of appeals shall sit on the committee; the chief judge of the district court of the judicial district in which the metropolitan court is located or the chief judge's designee from that district court shall sit on the committee; the chief judge of that metropolitan court or the chief judge's designee from that metropolitan court shall sit on the committee only in the case of a vacancy in a metropolitan court; and the citizen members and state bar members shall be persons who reside in the judicial district in which that metropolitan court is located.

N.M. Const. art. 6, § 37.