IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMSC-005

Filing Date: December 21, 2015

Docket No. S-1-SC-35,075

PAMELA J. CLARK,

        Petitioner,

v.

HON. ALBERT J. MITCHELL, JR.,
Tenth Judicial District Court Judge,

        Respondent.

ORIGINAL PROCEEDING

Warren F. Frost, P.C.
Warren F. Frost
Logan, NM

for Petitioner


Rodey, Dickason, Sloan, Akin & Robb, P.A.
Henry M. Bohnhoff
Melanie Bret Stambaugh
Albuquerque, NM

for Respondent

OPINION

MAES, Senior Justice.

{1}    In this case we are once again called upon to interpret the 1988 amendments to the New Mexico Constitution governing judicial selection. The question before the Court is whether Article VI, Section 33 of the New Mexico Constitution prohibits a district judge who loses a nonpartisan retention election from being appointed to fill the resulting vacancy created by that judge's nonretention. We hold that the New Mexico Constitution does not

prohibit a judicial nominating commission from considering and nominating, or the governor from appointing, an otherwise qualified judicial applicant to fill a vacant judicial office based on the judicial applicant's nonretention in the immediately preceding election. We recognize that our holding may seem counterintuitive at first glance. However, our holding is governed by our Constitution's provisions governing judicial succession, not retention.

**BACKGROUND**

**{2}** There is only one judge on the Tenth Judicial District Court which has jurisdiction over the counties of Quay, DeBaca, and Harding. *See* NMSA 1978, § 34-6-1(J) (1992); § 34-6-13 (1968). In 2008, Albert J. Mitchell, Jr. won a contested election for Tenth Judicial District judge against Judge Donald Schutte. Pursuant to Article VI, Section 33 of the New Mexico Constitution, Judge Mitchell ran for retention in the 2014 general election. *See* N.M. Const. art. VI, § 33(A). ("Each . . . district judge . . . shall have been elected to that position in a partisan election prior to being eligible for a nonpartisan retention election. Thereafter, each such . . . judge shall be subject to retention or rejection on a nonpartisan ballot."). Prior to the retention election, the Judicial Performance Evaluation Commission evaluated Judge Mitchell and recommended that voters retain him in the general election.[1] Despite the Commission's recommendation, on November 4, 2014, Judge Mitchell was not retained, failing to garner at least fifty-seven percent of the votes cast on the question of his retention as required by Article VI, Section 33 of the New Mexico Constitution.[2]

**{3}** A district court judges nominating committee ("nominating committee") was convened to solicit and evaluate applicants to fill Judge Mitchell's impending vacancy. *See* N.M. Const. art. VI, § 34 (stating that the office of a judge who is not retained becomes vacant on January 1 immediately following the election at which the judge is not retained); *id.* art. VI, § 35 (stating that the appellate judges nominating commission "shall actively solicit, accept and evaluate applications from qualified lawyers for the position" and "shall meet within thirty days" of the judicial vacancy); *id.* art. VI, § 36 (applying the provisions of Section 35 to "the district judges nominating committee"). Judge Mitchell and former Judge Shutte applied for the vacancy.

**{4}** Before the nominating committee could meet, Petitioner asked this Court to prevent the nominating committee from accepting or considering Judge Mitchell's application. *See Clark v. Tenth Jud. Dist. Nominating Comm.*, No. 34,983 petition for writ of prohibition

---

[1]*See* http://www.nmjpec.org/en/judge-evaluation?election_id=260&year=2014; last visited 12/16/15.

[2]According to the official results from the Secretary of State's Office, the vote total was 1,883, or 49.97 percent, for retention and 1,885, or 50.03 percent, against retention. *See* http://electionresults.sos.state.nm.us/resultsSW.aspx?type= JDX&map=CTY; last visited 11/5/2015.

and/or superintending control (N.M. Sup. Ct. Nov. 19, 2014). Following oral argument, we denied Petitioner's request on the grounds that the matter would not be ripe for review until the nominating committee and the governor had an opportunity to exercise their respective constitutional authorities. *See Clark*, No. 34,983, order (N.M. Sup. Ct. Dec. 3, 2014).

**{5}** On December 11, 2014, the nominating committee met to interview and evaluate Judge Mitchell and former Judge Schutte for the impending vacancy. The fact of and reasons for Judge Mitchell's nonretention by the voters of the Tenth Judicial District were the subject of extensive discussion. The nominating committee ultimately submitted the names of both applicants to the governor for consideration.

**{6}** On January 9, 2015, Governor Susana Martinez appointed Judge Mitchell to the vacancy on the Tenth Judicial District Court. According to Judge Mitchell, the fact of and reasons for his nonretention were raised during his interview with the governor. In appointing Judge Mitchell the governor acknowledged,

> This decision presents an unusual choice between two candidates who each have lost judicial elections in their district. Donald Schutte, appointed in 2007, lost a contested election against Mitchell in 2008. In the most recent election in 2014, although Mitchell received support from a majority of voters in his district, he did not receive the higher number of votes needed in a retention election. The Judicial Performance Evaluation Commission had recommended that Mitchell be retained as a judge. Under state law, Mitchell will be required to stand for re-election in a contested race in the next general election.[3]

**{7}** On January 12, 2015, Petitioner filed a petition for a writ of quo warranto seeking to remove Judge Mitchell from the bench. After hearing oral argument, we denied the writ requested by Petitioner. We issue this opinion to explain our reasoning.

**DISCUSSION**

**{8}** "One of the primary purposes of quo warranto is to ascertain whether one is constitutionally authorized to hold the office he claims, whether by election or appointment, and we must liberally interpret the quo warranto statutes to effectuate that purpose." *State ex rel. Anaya v. McBride*, 1975-NMSC-032, ¶ 16, 88 N.M. 244, 539 P.2d 1006. A petition for a writ of quo warranto may be brought by a private person when the district attorney refuses to act. *See* NMSA 1978, § 44-3-4 (1919) ("When the attorney general or district

---

[3]*See* Press Release, Office of the Governor, Governor Susana Martinez Announces Judicial Appointments (Jan. 9, 2015), *available at* http://www.governor.state.nm.us/ uploads/PressRelease/191a415014634aa89604e0b4790e4768/Governor_Susana_Martine z_Announces_Judicial_Appointments_Jan_9_2015.pdf.; last visited 11/06/15.

3

attorney refuses to act . . . such action may be brought in the name of the state by a private person on his own complaint."). Petitioner requested that the district attorney pursue a quo warranto action against Judge Mitchell and the district attorney refused. Therefore, we proceed to the merits of Petitioner's claim.

**{9}**     Petitioner contends that Judge Mitchell is not constitutionally authorized to be appointed to the Tenth Judicial District Court due to his nonretention in the 2014 general election. In arguing for removing Judge Mitchell from the bench, Petitioner relies exclusively on Article VI, Section 33(A) of the New Mexico Constitution which states:

> Each . . . district judge . . . shall have been elected to that position in a partisan election prior to being eligible for a nonpartisan retention election. Thereafter, each such . . . judge shall be subject to retention or rejection on a nonpartisan ballot. *Retention of the judicial office shall require at least fifty-seven percent of the vote cast on the question of retention or rejection.*

(Emphasis added). Petitioner asserts that this language precludes the nominating committee from considering and nominating, and the governor from appointing, Judge Mitchell to the vacancy created by his nonretention. Finally, Petitioner argues that Judge Mitchell's appointment defeats the will of the voters of the Tenth Judicial District.

**{10}**     Judge Mitchell counters that this case is governed by the Constitution's rules of judicial succession, rather than judicial retention. In that regard, the text of the Constitution does not prohibit a judicial nominating commission from considering, and the governor from appointing, an otherwise qualified applicant to fill a vacant judicial office based on the applicant's nonretention in the immediately preceding election.

I.     **Judge Mitchell's appointment to his former office did not constitute "retention of the judicial office" under Article VI, Section 33**

**{11}**     Petitioner argues that by being appointed to the vacancy created by his nonretention Judge Mitchell is, in effect, "retaining" his office. Petitioner urges us to take a "common-sense" approach in viewing the concept of retention.

**{12}**     "It is presumed that words appearing in a constitution have been used according to their plain, natural, and usual signification and import, and the courts are not at liberty to disregard the plain meaning of words of a constitution in order to search for some other conjectured intent." *State ex rel. Gomez v. Campbell*, 1965-NMSC-025, ¶ 40, 75 N.M. 86, 400 P.2d 956 (internal quotation marks and citation omitted). Black's Law Dictionary (10th ed. 2014), defines the word "retain" as "[t]o hold in possession or under control; to keep and not lose, part with, or dismiss." In applying this definition of "retain" to Article VI, Section 33, it follows that the phrase "retention of the judicial office" does not contemplate a break in service. Judge Mitchell, however, suffered a break in service as a result of the November 2014 retention election. He was forced to vacate the office of Tenth Judicial District Court

4

judge on December 31, 2014, and was unemployed until he was appointed by the governor on January 9, 2015. Therefore, under the plain language of Article VI, Section 33, Judge Mitchell did not retain his office. We next consider whether Article VI, Section 33 otherwise prohibits Judge Mitchell from being appointed to his former judicial office.

**II.     Judge Mitchell's nonretention in the immediately preceding election did not disqualify him from lawfully succeeding himself**

**{13}**     Petitioner's core argument is that Judge Mitchell's nonretention in the 2014 general election disqualifies him from being considered for and appointed to his former judicial office. Therefore, we must determine whether the language of Article VI, Section 33 prohibits a judicial nominating commission from considering and nominating, or the governor from appointing, an otherwise qualified judicial applicant to fill a vacant judicial office based on the judicial applicant's nonretention in the immediately preceding election.

**A.     Article VI, Section 33 does not expressly prohibit a judicial nominating commission from considering and nominating, or the governor from appointing, an otherwise qualified judicial applicant to fill a vacant judicial office based on the judicial applicant's nonretention in the immediately preceding election**

**{14}**     "In construing the New Mexico Constitution, this Court must ascertain the intent and objectives of the framers." *In re Generic Investigation into Cable Television Servs. v. N.M. Corp. Comm'n*, 1985-NMSC-087, ¶ 10, 103 N.M. 345, 707 P.2d 1155. "[T]o determine the meaning of a constitutional provision, we begin with the language used in the provision and the plain meaning of that language." *Hem v. Toyota Motor Corp.*, 2015-NMSC-024, ¶ 10, 353 P.3d 1219 (internal quotation marks and citation omitted). "The historical purposes of the constitutional provision are instructive in determining the obvious spirit . . . utilized in [its drafting]." *State v. Boyse*, 2013-NMSC-024, ¶ 16, 303 P.3d 830 (alterations and omission in original) (internal quotation marks and citation omitted).

**{15}**     Article VI, Section 33 contains no affirmative language prohibiting a nominating commission from considering and nominating, and the governor from appointing, a judicial applicant based upon the applicant's nonretention in the immediately preceding election. Nevertheless, Petitioner argues that "[e]ven if this Court should determine that [Article VI,] Section 33 is somehow ambiguous because it does not contain a specific provision prohibiting a non-retained judge from seeking appointment to his own vacancy, this Court should interpret [Article VI,] Section 33 to include such a prohibition . . . ." "We will not read into the Constitution language which is not there, especially when it makes sense as it is written." *In re Rescue EcoVersity Petition*, 2012-NMCA-008, ¶ 6, 270 P.3d 104 (internal quotation marks and citation omitted), *rev'd on other grounds by Convisser v. EcoVersity*, 2013-NMSC-039, ¶ 30, 308 P.3d 125.

**{16}**     Furthermore, the history and context of Article VI, Section 33 do not indicate any intent by the framers to prohibit nonretained judges from applying for and being appointed

to judicial vacancies. *See New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 11, 138 N.M. 785, 126 P.3d 1149 ("If the meaning of a clause is not clear, by virtue of having more than one fair and reasonable interpretation, then we may consider history and context to shed light on the terms used and to ascertain the will of the people."). The provision of Article VI, Section 33 on which Petitioner relies was adopted by voters in 1994. *See* 1994 N.M. Laws, S.J.R. No. 1, Constitutional Amendment 10. The purpose of the 1994 amendment was simply to increase the percentage of the vote necessary to retain a judge. *See id.* ("Increasing the number of votes required for judicial retention elections."). Before 1994, only a majority vote was necessary to retain a judge. *See* N.M. Const. art. VI, § 33 (1989) ("Thereafter, each such justice or judge shall be subject to retention or rejection on a nonpartisan ballot.").

**B.    Article VI, Section 33 does not govern the process of judicial succession**

**{17}**    "The provisions of the Constitution should not be considered in isolation, but rather should be construed as a whole." *In re Generic Investigation into Cable Television Servs.*, 1985-NMSC-087, ¶ 13. Petitioner's argument relies on interpreting Article VI, Section 33 in isolation. Article VI, Section 33 only addresses the requirements for winning a retention election. As Judge Mitchell points out, this case is governed by the constitutional provisions governing nomination and appointment to judicial vacancies, or judicial succession, rather than the constitutional provisions governing retention elections.

**{18}**    The judicial succession process is separate and apart from the retention election process and is governed by two different sections of the New Mexico Constitution, Article VI, Sections 35 and 36. Article VI, Section 35 governs the judicial succession process for appellate court vacancies. *See* N.M. Const. art. VI, § 35 (creating an "appellate judges nominating commission"). However, the provisions of Article VI, Section 35 are made applicable to district court vacancies through Article VI, Section 36. *See* N.M. Const. art. VI, § 36 ("Each and every provision of Section 35 of Article 6 of this constitution shall apply to the 'district judges nominating committee' . . . .").

**{19}**    When a judge is not retained, that judge's office becomes vacant the following January 1. *See* N.M. Const. art. VI, § 34 ("The office of any . . . judge . . . becomes vacant on January 1 immediately following the general election at which the . . . judge is rejected by more than forty-three percent of those voting on the question of retention or rejection . . ."). The occurrence of an actual vacancy triggers the convening of a district court judges nominating committee. *See* N.M. Const. art. VI, § 35 ("Upon the occurrence of an actual vacancy in the office of justice of the supreme court or judge of the court of appeals, the commission shall meet within thirty days . . . ."); *id.* art. VI, § 36 (applying the provisions of Article VI, Section 35 to the "district judges nominating committee"). The nominating committee is required to "actively solicit, accept and evaluate applications from qualified lawyers for the position . . . ." *See* N.M. Const. art. VI, § 35. "[T]he commission shall meet within thirty days [of the occurrence of the vacancy] and within that period submit to the governor the names of persons *qualified for the judicial office* and *recommended for*

6

*appointment* to that office by a majority of the commission." *See id.* (emphasis added). Therefore, under Section 35, to be appointed by the governor a judicial applicant must be: (1) "qualified for the judicial office," and (2) "recommended for appointment" by the nominating committee based on its evaluation of the application. *See State ex rel. Richardson v. Fifth Jud. Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 19, 141 N.M. 657, 160 P.3d 566 ("The Commission . . . determines, based on a variety of factors and by a majority vote, which applicants are 'qualified for the judicial office' and 'submit[s] to the governor the names of [such] persons,' both qualified and recommended." (alterations in original) (citations omitted)); *see also* Leo M. Romero, *Judicial Selection in New Mexico: A Hybrid of Commission Nomination and Partisan Election*, 30 N.M. L. Rev. 177, 189 (2000) ("This language requires the commission to make two decisions: (1) whether the applicant is qualified, and (2) should the applicant, if qualified, be recommended to the governor based on the evaluation of the application.").

**{20}**     As a preliminary matter, neither of the two requirements for appointment to a judicial vacancy described above specifically include not losing a retention election. Article VI, Section 35 contains no express language precluding a nominating commission from considering and nominating, and the governor from appointing, an otherwise qualified judicial applicant to fill a vacant judicial office based on the judicial applicant's nonretention in the immediately preceding election. "We will not read into the Constitution language which is not there, especially when it makes sense as it is written." *In re Rescue EcoVersity Petition*, 2012-NMCA-008, ¶ 6 (internal quotation marks omitted).

**{21}**     Under the New Mexico Constitution, district judges must (1) be at least thirty-five years old, (2) have been in the actual practice of law for at least six years preceding their assumption of office, (3) have resided in this state for at least three years immediately preceding their assumption of office, and (4) reside in the district in which they seek appointment. *See* N.M. Const. art. VI, § 8 ("No person shall be qualified to hold the office of justice of the supreme court unless that person is at least thirty-five years old and has been in the actual practice of law for at least ten years preceding that person's assumption of office and has resided in this state for at least three years immediately preceding that person's assumption of office."); *id.* art. VI, § 14 ("The qualifications of the district judges shall be the same as those of justices of the supreme court except that district judges shall have been in the actual practice of law for at least six years preceding assumption of office. Each district judge shall reside in the district for which the judge was elected or appointed."); *see also* Romero, *supra*, at 188 ("To be qualified for the position of district judge, a person must be thirty-five years of age, have actually practiced law for six years, and be a resident in the district in which the judicial position is located." (footnote omitted)). Petitioner concedes that Judge Mitchell meets these qualifications. Given that Judge Mitchell meets these requirements, the nominating committee was required to accept and consider his application. *See id.* ("The commission *shall* actively . . . accept and evaluate applications from qualified lawyers for the position . . . ." (emphasis added)).

**{22}**     While we hold that the nominating committee was required to accept and consider

Judge Mitchell's application, we also hold that in the course of its evaluation of an applicant, a nominating committee may take into consideration the fact that an applicant previously lost a retention election for the judicial office in question. The fact and reasons for a judge's nonretention may warrant consideration among the many factors a nominating committee evaluates. *See* N.M. Const. art. VI, § 35 (stating that the nominating committee "may require an applicant to submit any information it deems relevant to the consideration of his application."); *see also* Romero, *supra*, at 189-90 (listing the evaluative criteria the nominating committee uses to assess applicants).

**{23}** In this case, the fact and reasons of Judge Mitchell's nonretention were considered by the nominating committee. Ultimately, the nominating committee, in its discretion, recommended Judge Mitchell to the governor. Petitioner would have us control the discretion of the committee by reading into the Constitution a disqualification that does not exist. This Court has been hesitant to disturb a nominating commission's discretion to recommend qualified applicants to the governor. "It is the Commission alone that decides who to recommend to the governor. We will neither trammel upon, nor diminish in any way, that core function reposed in the Commission by our Constitution." *Richardson*, 2007-NMSC-023, ¶ 18. Therefore, we will not second-guess the nominating committee's decision to recommend Judge Mitchell to the governor.

**{24}** We are equally hesitant to disturb the governor's authority to appoint a judge from a list of qualified and recommended applicants. "In designing the merit selection system, the drafters envisioned limiting the pool from which the governor could appoint based on the merit of the applicants. The drafters did not, however, envision nor intend to foreclose the governor's choice altogether." *Id.* ¶ 16. Therefore, under Article VI, Section 35, the governor, as the elected representative of the people, was free to appoint Judge Mitchell so long as he was "one of the persons nominated by the commission for appointment to that office." *See* N.M. Const. art. VI, § 35; *see also Richardson*, 2007-NMSC-023, ¶ 16 ("[T]he drafters vested the governor, as the elected representative of the people of the State of New Mexico, with ultimate authority in selecting the individual to fill a judicial vacancy.").

**C.     Other states have expressly prohibited judges who lose retention elections from succeeding themselves**

**{25}** While the 1988 amendments that resulted in the adoption of Article VI, Sections 33, 35, and 36 do not include any express prohibition against the appointment of a judge who loses a retention election to fill the resulting vacancy, the constitutions and statutes of at least six other states with retention elections do provide such a prohibition. *See* Alaska Const. art. IV, § 6 (providing for retention elections for judges and justices); Alaska Stat. § 22.05.100(J) (1980) ("[T]he rejected justice may not be appointed to fill any vacancy in the supreme court, court of appeals, superior court, or district courts of the state for a period of four years thereafter."); *see also* Cal. Const. art. VI, § 16(d)(1) (1966, as amended through 2002); Okla. Const. art. VII-B, § 2 (1967); Kan. Stat. Ann. § 20-2908 (1974, as amended through 1989); § 20-3006(C) (1975, as amended through 2013); Okla. Stat. Ann. tit. 20, § 30.16 (1987, as

8

amended through 1996);Tenn. Code Ann. § 17-4-110(b) (2009); Utah Code Ann. § 20a-12-201(6) (1995, as amended through 2014).

**{26}** The silence of New Mexico's constitution regarding the appointment of nonretained judges stands in stark contrast to the states listed above. We recognize that "[l]egislative silence is at best a tenuous guide to determining legislative intent . . . ." *Swink v. Fingado*, 1993-NMSC-013, ¶ 29, 115 N.M. 275, 850 P.2d 978 (internal citation omitted). It is certainly possible that the drafters of the 1988 amendments simply never thought of and considered whether to prohibit nonretained judges from seeking appointment to vacant judicial offices. Nevertheless, "[t]he Legislature is presumed to know existing statutory law and to take that law into consideration when enacting new law." *Gutierrez v. W. Las Vegas Sch. Dist.*, 2002-NMCA-068, ¶ 15, 132 N.M. 372, 48 P.3d 761. The prohibitions in Alaska, California, Kansas, and Oklahoma were adopted prior to 1988. Theoretically, the drafters of the 1988 amendments could have drawn on these existing state statutes and constitutions in crafting the 1988 amendments. In fact, the historical record demonstrates that the drafters considered at least one state. The original proposal submitted to the Legislature was based on the Missouri plan. *See* Romero, *supra*, at 182 ("The proposal called for a nomination-appointment-retention election system for selecting judges similar to the Missouri plan."). The Missouri plan does not contain a prohibition on the appointment of nonretained judges. *See* Mo. Const. art. V, § 25(c)(1)(1945, as amended through 1976). ("If a majority of those voting on the question vote against retaining him in office, upon the expiration of his term of office, a vacancy shall exist which shall be filled by appointment . . . .").

### III.    Judge Mitchell's appointment does not defeat the will of the voters

**{27}** Petitioner argues that Judge Mitchell's appointment defeats the will of the voters of the Tenth Judicial District. While we are not unsympathetic to Petitioner's argument, we disagree for two reasons. First, the electorate's role in the process of judicial succession is indirect and the process by which Judge Mitchell was appointed proceeded according to the dictates of the Constitution. Second, Judge Mitchell's nonretention has practical and legal consequences.

### A.    The role of the electorate in the process of judicial succession is and has always been indirect

**{28}** Although the voters play a central role in the selection of judges during partisan and retention elections, the electorate's role in the appointment of judges has always been indirect. "For most of our state's history, our Constitution required partisan election of the entire judiciary, with the governor filling judicial vacancies by appointment." *Richardson*, 2007-NMSC-023, ¶ 16 (citations omitted). "In 1988, the Constitution was amended to institute a merit selection system, in which the governor now fills judicial vacancies by appointment from a list of applicants who are evaluated on a variety of merit-based factors and recommended by a judicial nominating commission." *Id.* Although the 1988

amendments placed a limitation on who the governor may appoint, "the drafters [still] vested the governor, as the elected representative of the people of the State of New Mexico, with ultimate authority in selecting the individual to fill a judicial vacancy." *See id.*

**{29}** The electorate played its role under Article VI, Section 33 in not retaining Judge Mitchell. However, as we have explained, the nominating committee and the governor equally played their roles under Article VI, Sections 35 and 36 in nominating and appointing Judge Mitchell. Although the end result may be disappointing to some, the process by which Judge Mitchell was appointed proceeded according to the dictates of the Constitution.

**B.     Judge Mitchell must run in a partisan election to keep his seat**

**{30}** Judge Mitchell's nonretention and appointment is not without consequence. Indeed, it was only because of his nonretention that a nominating committee was convened, applications to fill the vacancy were solicited and accepted, the committee met and interviewed the applicants, and the governor filled the vacancy. Due to his nonretention in the 2014 general election, in order to remain on the bench, Judge Mitchell will be required to run in a partisan election in the 2016 general election, instead of a nonpartisan retention election in 2020. *See* N.M. Const. art. VI, § 33(C) ("Each district judge shall be subject to retention or rejection in like manner at the general election every sixth year."); *id.* art. VI, § 35 ("Any person appointed shall serve until the next general election. That person's successor shall be chosen at such election and shall hold the office until the expiration of the original term.").

**CONCLUSION**

**{31}** The New Mexico Constitution contains no affirmative language disqualifying an applicant for a vacant judicial office based upon the applicant's nonretention in the immediately preceding election. Despite its appeal, adopting Petitioner's argument would require us to read language into the Constitution that does not exist.

**{32}** Accordingly, we appropriately denied Petitioner's petition for a writ of quo warranto. Judge Mitchell lawfully succeeded himself. It is the prerogative of the New Mexico Legislature to propose, and the voters to adopt, a constitutional amendment if they wish to avoid such a result following future retention elections.

**{33}     IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

10

**BARBARA J. Vigil, Chief Justice**

_____

**MICHAEL D. BUSTAMANTE, Judge**
**Sitting by designation**

_____

**JONATHAN B. SUTIN, Judge**
**Sitting by designation**

_____

**CYNTHIA A. FRY, Judge**
**Sitting by designation**

11